**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

In re:                                                            Case No.: 21-11554-CLC
                                                                 Chapter 7
Wasim Shomar,

       Debtor.
_____

Soneet R. Kapila, Trustee in
Bankruptcy for Wasim Shomar,

       Plaintiff.
vs.                                                              Adv.Proc.No.: 23-01030-CLC

Rania Yousef and Sabah Barakat
aka Sabah Bakarat,

       Defendants.
_____/

## TRUSTEE'S AMENDED COMPLAINT TO AVOID AND RECOVER FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §§ 544, 548, 550 AND FLORIDA STATUTES § 726, RESULTING TRUST, CONSTRUCTIVE TRUST, EQUITABLE LIEN, AND OBJECTION TO PROOF OF CLAIM

*(Amended to update Count VIII[1] Objection to Proof of Claim, upon Defendant, Rania Yousef filing an amendment to Proof of Claim Number 14 on September 19, 2023)*

       The Plaintiff (hereinafter referenced as the "Plaintiff" or "Trustee") Soneet R. Kapila,

Trustee in Bankruptcy for Wasim Shomar ("Debtor") by and through undersigned counsel, hereby

sues the Defendants, Rania Yousef and Sabah Barakat aka Sabah Bakarat, pursuant to Bankruptcy

Rule 7001, and alleges:

## JURISDICTION

       1.      This is an adversary proceeding brought by Soneet R. Kapila, Trustee in

Bankruptcy for Wasim Shomar, against the Debtor's ex-wife, Rania Yousef ("Ms. Yousef") and

---

[1] Count VIII has been revised to Count IX herein to account for a scrivener's error in the Complaint [ECF No. 1] wherein Count V was listed twice.

the Debtor's mother in law, Sabah Barakat aka Bakarat, ("Ms. Barakat"), or collectively (the "Defendants"), to avoid and recover voidable or fraudulent transfers pursuant to 11 U.S.C. §§ 544, 548, 550 and Section 726, *Florida Statutes*, imposition of equitable lien through a resulting or constructive trust as against real property located in New Jersey for funds of the Debtor improperly and fraudulently transferred to purchase such real property, and objection to claim numbers 14-1 and 14-2 in their entirety, and any further amendments thereto.

2.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §157 and §1334(b).

3.    This a core proceeding for which the Court is authorized to hear and determine all matters regarding this case in accordance with 28 U.S.C. § 157(b)(2)(A),(B),(E),(H),(K) and (O).

4.    This voluntary proceeding was filed on February 17, 2021 as a Chapter 7 proceeding.  Soneet R. Kapila has been appointed as the Chapter 7 Trustee.

5.    The Defendants, Sabah Barakat and Rania Yousef, are over the age of eighteen, are subject to the jurisdiction of the court.  The Defendant, Ms. Barakat, is the mother in law of the Debtor and the Defendant, Ms. Yousef, is the ex-wife of the Debtor and are therefore insiders as defined by 11 U.S.C. §101(31) and applicable State law.

6.    Venue is proper in this Court pursuant to 28 U.S.C. §§1408 and 1409.

## PROCEDURAL HISTORY

7.    The §341 Meeting of Creditors was held and concluded on March 23, 2021 [ECF No. 26].

8.    The Debtor filed his Initial Schedules on February 17, 2021[ECF No. 1].

9.    The Debtor filed his Amended Schedules on March 30, 2021 [ECF No. 33], his second Amended Schedules on June 17, 2021 [ECF No. 79], and his third Amended Schedules on September 10, 2021 [ECF No. 115].

10.     On October 8, 2021, Trustee's counsel filed a Notice of Taking Rule 2004 Examination Duces Tecum of Rania Yousef ("Ms. Yousef") [ECF No. 125] and filed an Amended Notice of Taking Rule 2004 Examination Duces Tecum of Rania Yousef on October 25, 2021 [ECF No. 130].  Ms. Yousef and her counsel appeared at the examination on November 2, 2021.

## **FACTUAL HISTORY**

11.     During Ms. Yousef's Rule 2004 examination, she testified that certain transfers were made from the Debtor's bank accounts and/or credit cards to benefit her mother, Ms. Barakat. Ms. Yousef testified that a credit card charge of the Debtor was made payable to Stephan Baker, MD on March 2, 2019, in the amount of $18,060.00 for Ms. Barakat's plastic surgery.  Ms. Barakat rented an apartment at 475 Brickell Avenue, Apt. 2112, Miami Florida ("Brickell Avenue Apartment"). On January 14, 2020, a charge to the Debtor's credit card for $2,600.00 was paid to Cozy Services for Ms. Barakat's rent, another charge in the amount of $2,600.00 was charged on February 11, 2020 and another was paid in the amount of $2,600.00 on March 10, 2020.  All three charges on the Debtor's credit card to Cozy Services in the total amount of $7,800.00 were for payment of Ms. Barakat's rent at the Brickell Avenue Apartment. Further, Ms. Yousef testified that she transferred a total of $130,000.00 of funds traceable to the Debtor to purchase a one-half interest in a condominium located at 8915 Bergenwood Avenue, Apt. 5 a/k/a Apt. 16, North Bergen, New Jersey  07047 ("Real Property").  The deed to the Real Property obtaining ownership is only in the name of the Defendant, Ms. Barakat, which was done to hinder, delay and/or defraud creditors, including the Trustee and the Debtor himself.

12.     Ms. Yousef and the Debtor were married on June 3, 2019.

13.     The Debtor made certain transfers to Ms. Yousef pursuant to a Premarital Mahr Agreement (the "Agreement") dated May 29, 2019.  The Trustee has sought to avoid the incurring of the obligation of the Agreement within the counts below which is specifically directed towards the Debtor entering into the Premarital Mahr Agreement. Ms. Yousef testified that the Agreement provided for paying $50,000.00 and another $150,000.00 over time when they married.  The Debtor transferred $50,000.00 on June 3, 2019, the day they got married.  Ms. Yousef testified that the Debtor paid her another $50,000.00 on her birthday, which was January 16, 2020, and was to pay another $100,000.00 for her birthday on January 16, 2021, and another $300,000.00 if they divorced, according to the Agreement. Ms. Yousef testified that the Debtor never paid the $100,000.00.  The two transfers of $50,000.00 on June 3, 2019 and January 16, 2020 will be hereinafter defined as the Agreement Transfers. Ms. Yousef filed proof of claim no. 14-1 in the amount of $102,726.19 asserting "Dower due on January16, 2021 per the Premarital and Mahr Agreement" with an attachment that lists an amount of $100,000.00 and interest in the amount of $2,726.19.

14.     Ms. Yousef and Ms. Barakat purchased the Real Property for a purchase price of $260,000.00 on September 30, 2020.   The Real Property is more particularly described as:

**ALL that (those) certain lots(s), tract(s) or parcel(s) of land, with the buildings and improvements thereon erected situate lying and being in the Township of North Bergen, County of Hudson, and State of New Jersey and is bounded and described as follows:**

**BEING known and designated as Unit No. 16, Parking Space 22, situated in Bell Crest Courtyard, a condominium, together with 0.901 and 0.1777% undivided interest in the Common Elements of said Condominium in accordance with and subject to the terms, limitations, conditions, covenants, restrictions, easemets, agreements and other provisions set forth in the Master Deed, which was dated 11/28/2001 and recorded 11/29/2001 in the Office of the Clerk of Hudson County in Deed Book 5903, Page 56, as amended in Deed Book 5927, Page 241 and Deed Book 5963, Page 153 as the same may now or hereafter be lawfully amended.**

**BEING known as Tax Lot 1, Qualifier C0016, C022, in Tax Block 413, on the Official Tax Map of the Township of North Bergen.**

15.     Ms. Yousef testified that the Debtor transferred $50,000.00 to her on June 3, 2019 and on January 16, 2020, the Debtor transferred $50,000.00 to Ms. Barakat. Such transfer to Ms. Barakat was because of Ms. Yousef's request to transfer this $50,000.00 into her mother's name because she felt the Debtor was trying to take money away from her.  Ms. Yousef testified that the second transfer of $50,000.00 was intended to be to purchase a one-half ownership interest in the Real Property.  However, Ms. Yousef and Ms. Barakat agreed to put title of the Real Property in Ms. Barakat's name in an effort to place such funds beyond the reach of the Debtor and his creditors. It was agreed between the Defendants that once Ms. Yousef and the Debtor were divorced, Ms. Barakat would convey ownership of the Real Property into the name of herself and Ms. Yousef. Ms. Yousef testified that she transferred a total amount of $130,000.00 to Ms. Barakat for her one half interest in the Real Property, yet Ms. Yousef's name was not put on the deed to the Real Property.

16.     Ms. Yousef testified that in September of 2020, she withdrew $10,000.00 from her account, which was traceable to funds from the Debtor, to pay the purchase deposit on the Real Property.

17.     Ms. Yousef testified that on September 28, 2020, she wired funds from her account, all of which was traceable to the Debtor, in the amount of $115,702.00 towards the purchase of the Real Property. In total, after factoring in all funds traceable to the Debtor, $180,000.00 of funds traceable to the Debtor were transferred into the purchase of the Real Property.

18.     Within two (2) years of the filing of the bankruptcy petition, as evidenced by Exhibit "1" attached hereto, the Debtor transferred a total amount of $75,860.00 on behalf of or to

the Defendant, Sabah Barakat.

19.     Within two (2) years of the filing of the bankruptcy petition, as evidenced by Exhibit "1" attached hereto, the Debtor transferred a total amount of $64,209.69 on behalf of or to the Defendant, Rania Yousef.

20.     The Debtor's transfers to and/or on behalf of the Defendant, Rania Yousef,  were paid from the Debtor's personal account and/or credit cards on behalf of Ms. Yousef within a four (4) year period in the total amount of $624,663.24, less the transfers made on behalf of Ms. Barakat in the total amount of $75,860.00, for a total amount of transfers to Rania Yousef in the amount of $548,803.24.  A list of the total transfers made to/or on behalf of both of the Defendants over a four year period of time is attached as Exhibit "2" ("Total Transfers"). The Agreement Transfers are included within the total transfers to Rania Yousef in the amount of $548,803.24.

21.     At the time of the Total Transfers from the Debtor to the Defendants as alleged above, the Debtor was insolvent or became insolvent as a result of same as defined within 11 U.S.C. §101(32) and Florida Statute §726 et seq.

## **COUNT I - FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 548**

22.     The Plaintiff re-alleges paragraphs 1 through 21 as if fully set forth herein.

23.     Within two (2) years of the filing of the bankruptcy petition, as evidenced by Exhibit "1" attached hereto, the Debtor transferred a total amount of $75,860.00 on behalf of or/ to the Defendant, Sabah Barakat

24.     Within two (2) years of the filing of the bankruptcy petition, as evidenced by Exhibit "1" attached hereto, the Debtor transferred a total amount of $64,209.69 on behalf of or/ to the Defendant, Rania Yousef and transferred the Agreement Transfers in the amount of $100,000.00.  The total two (2) year transfers to both Defendants will collectively be defined as

"Two Year Transfers".  A copy of the total Two Year Transfers made to/or on behalf of the Defendants is attached as Exhibit "1".  Additionally, the Debtor incurred the obligation of entering into the Agreement and making the Agreement Transfers in the amount of $100,000.00 within less than two years of the filing of the bankruptcy petition.

25.     The Two Year Transfers to the Defendants, the Debtor incurring the obligation of the Agreement and the Agreement Transfers were transfers made with the actual intent to hinder, delay, and/or defraud creditors pursuant to 11 U.S.C. § 548(a)(1).

26.     The Two Year Transfers, the incurring of an obligation pursuant to the Agreement and the Agreement Transfers occurred pre-petition occurred within two (2) years prior to the Petition Date, whereby the Debtor received less than a reasonably equivalent value in exchange for the transfers or incurring of the obligation of the Agreement and:

    (a)     Was insolvent on the date that the transfers or incurring of the obligation of the Agreement were made or became insolvent as a result of the transfers and of incurring of the obligation of the Agreement;

    (b)     Was engaged in business or a transaction or was about to engage in business or a transaction for which any property remaining with the Debtor was an unreasonably small capital; or

    (c)     The Debtor intended to incur or believed that he would incur debts beyond his ability to pay as such debts matured.

27.     The Defendants were the initial transferees or the entities for whose benefit the Two Year Transfers were made and Ms. Yousef was the initial transferee or the entity for whose benefit the Agreement Transfers were made whereby the Plaintiff is entitled to recover the Two Year Transfers and Agreement Transfers pursuant to 11 U.S.C. § 550(a)(1), attached hereto as "Exhibit 1". Alternatively, the Defendants were the immediate or mediate transferee of the initial transferee for whose benefit the Two Year Transfers were made and Ms. Yousef was the immediate or

mediate transferee of the initial transferee for whose benefit the Agreement Transfers were made and, as a result, the Plaintiff is entitled to recover the Two Year Transfers and Agreement Transfers pursuant to 11 U.S.C. §550(a)(2). In regard to the incurring of the obligation of the Agreement the proper and appropriate relief would be the setting aside and avoidance of the incurring of such obligation.

**WHEREFORE**, the Plaintiff, Soneet R. Kapila, Trustee in Bankruptcy for Wasim Shomar, by and through undersigned counsel, respectfully requests that the Court enter a judgment setting aside, avoiding and recovering the Two Year Transfers and Agreement Transfers, thus entering judgment against Defendant, Rania Yousef, in the amount of $164,209.69 and against Defendant, Sabah Barakat, in the total amount of $75,860.00, further, that the Court set aside and avoid the incurring of the obligation of the Agreement thus finding same to be of no force and effect, plus that the Court award court costs and interest, plus such other and further relief as the Court deems just and proper.

## COUNT II – FRAUDULENT TRANSFERS PURSUANT TO §726.105(1)(A), *FLORIDA STATUTES* AND 11 U.S.C. §544(B)

28.     The Plaintiff re-alleges paragraphs 1 through 21 as if fully set forth herein.

29.     Within two (2) years of the filing of the bankruptcy petition, as evidenced by Exhibit "1" attached hereto, the Debtor transferred a total amount of $75,860.00 on behalf of or/ to the Defendant, Sabah Barakat.

30.     Within two (2) years of the filing of the bankruptcy petition, as evidenced by Exhibit "1" attached hereto, the Debtor transferred a total amount of $64,209.69 on behalf of or/ to the Defendant, Rania Yousef.  Within four (4) years of the filing of the bankruptcy petition, as evidenced by Exhibit "2" attached hereto, the Debtor made transfers to both Defendants in the total amount of $624,663.24, which has been defined above as the Total Transfers. Additionally,

the Debtor entered into the Agreement within less than two years of the filing of the bankruptcy petition.

31.     Pursuant to 11 U.S.C. §544(b), the Trustee may avoid any transfer of an interest of the Debtor in property or any obligation incurred by the Debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under §502 of this title or that is not allowable only under §502(e) of this title.

32.     §726.105(1)(a), *Florida Statutes*, provides that:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: with actual intent to hinder, delay, or defraud any creditor of debtor.

33.     As set forth above, the Total Transfers and the Debtor incurring the obligation of the Agreement were made with the actual intent to hinder, delay, and/or defraud creditors pursuant to §726.105(1)(a), *Florida Statutes*.

34.     The Defendants were the initial transferees or the entities for whose benefit the Total Transfers were made whereby the Trustee, Soneet R. Kapila, is entitled to recover such Total Transfers pursuant to 11 U.S.C. §550(a)(1).  Alternatively, the Defendants were the immediate or mediate transferee of the initial transferee for whose benefit the Total Transfers were made, and, as a result, the Plaintiff is entitled to recover the Total Transfers pursuant to 11 U.S.C. §550(a)(2). In regard to the incurring of the obligation of the Agreement the proper and appropriate relief would be the setting aside and avoidance of the incurring of such obligation.

WHEREFORE, the Plaintiff, Soneet R. Kapila, Trustee in Bankruptcy for Wasim Shomar by and through undersigned counsel, respectfully requests that the Court enter judgment setting aside, avoiding and recovering the Total Transfers, thus entering judgment against Defendant,

Rania Yousef, in the amount of $548,803.24 and against Defendant, Sabah Barakat, in the total

amount of $75,860.00, further, that the Court set aside and avoid the incurring of the obligation of

the Agreement thus finding same to be of no force and effect, plus award court costs and interest,

plus such other and further relief as the Court deems just and proper.

### <u>COUNT III – AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS<br>PURSUANT TO §726.105(1)(b), FLORIDA STATUTES AND 11 U.S.C. §544(B)</u>

35.    The Trustee re-alleges paragraphs 1 through 21 as if fully set forth herein.

36.    Pursuant to 11 U.S.C. §544(b), the Trustee may avoid any transfer of an interest of

the Debtor in property or any obligation incurred by the Debtor that is voidable under applicable

law by a creditor holding an unsecured claim that is allowable under §502 of this title or that is not

allowable only under §502(e) of this title.

37.    Section 726.105(1)(b), *Florida Statutes*, provides:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor,
whether the creditor's claim arose before or after the transfer was made or the
obligation was incurred, if the debtor made the transfer or incurred the obligation:
without receiving reasonably equivalent in value in exchange for the transfer or
obligation, and the debtor:

(a)    was engaged or was about to engage in a business or
a transaction for which the remaining assets of the debtor were
unreasonably small in relation to the business or transaction; or

(b)    intended to incur, or believed or reasonably should
have believed that he would incur, debts beyond his ability to pay as
they became due.

38.    The Total Transfers to or on behalf of the Defendants and the Debtor incurring the

obligation of the Agreement were made without the Debtor receiving reasonably equivalent value

in exchange for the Total Transfers pursuant to §726.105(1)(b), Florida Statutes.

39.    More specifically, within four (4) years of the Debtor's bankruptcy filing, the

Debtor transferred a total of $75,860.00 to or behalf of Defendant, Sabah Barakat, a total of $548,803.24 on behalf of the Defendant, Rania Yousef, and incurred the obligation of the Agreement which were made without the Debtor receiving reasonably equivalent value in exchange for the Total Transfers or the incurring of the obligation of the Agreement pursuant to §726.105(1)(b), Florida Statutes.

40.     At the time of the Total Transfers and the incurring of the obligation of the Agreement, the Debtor had incurred debts beyond his ability to pay as they became due.

41.     As a result of the Total Transfers and the incurring of the obligation of the Agreement, the Trustee has been damaged pursuant to 11 U.S.C. §544(b) for the total value of the Total Transfers.

42.     The Defendants were the initial transferee or the entities for whose benefit the Total Transfers were made whereby the Plaintiff is entitled to recover the Total Transfers pursuant to 11 U.S.C. §550(a)(1).  Alternatively, the Defendants were the immediate or mediate transferee of the initial transferee for whose benefit the Total Transfers were made, and, as a result, the Plaintiff is entitled to recover the Total Transfers pursuant to 11 U.S.C. §550(a)(2). In regard to the incurring of the obligation of the Agreement the proper and appropriate relief would be the setting aside and avoidance of the incurring of such obligation.

WHEREFORE, the Plaintiff, Soneet R. Kapila, Trustee in Bankruptcy for Wasim Shomar, by and through undersigned counsel, respectfully requests that the Court enter a judgment setting aside, avoiding and recovering the Total Transfers, thus entering judgment against Defendant, Rania Yousef, in the amount of $548,803.24, against Defendant, Sabah Barakat, in the total amount of $75,860.00, further, that the Court set aside and avoid the incurring of the obligation of

the Agreement thus finding same to be of no force and effect, plus award court costs and interest,

plus such other and further relief as the Court deems just and proper.

## COUNT IV - FRAUDULENT TRANSFERS PURSUANT
## TO SECTION 726.106(1), FLORIDA STATUTES AND 11 U.S.C. §544(B)

43.     The Plaintiff re-alleges paragraphs 1 through 21 as if fully set forth herein.

44.     Pursuant to 11 U.S.C. §544(b), the Trustee may avoid any transfer of an interest of

the Debtor in property or any obligation incurred by the Debtor that is voidable under applicable

law by a creditor holding an unsecured claim that is allowable under §502 of this title or that is not

allowable only under §502(e) of this title.

45.     §726.106(1), Florida Statutes, provides:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose
claim arose before the transfer was made or the obligation was incurred if the debtor made the
transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for
the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent
as a result of the transfer or obligation.

46.     The Total Transfers and the incurring of the obligation of the Agreement occurred

pre-petition occurred within four (4) years prior to the Petition Date.

47.     Within four (4) years the Debtor transferred a total amount of $548,803.24 to or/on

behalf of Defendant, Rania Yousef, and incurred the obligation of the Agreement without the

Debtor receiving reasonably equivalent value pursuant to §726.106(1), Florida Statutes.

48.     Within four (4) years of the Debtor's filing, the Debtor transferred a total of

$75,860.00 to or behalf of Defendant, Sabah Barakat, without the Debtor receiving reasonably

equivalent value pursuant to §726.106(1), Florida Statutes.

49.     As set forth above, at the time(s) of the Total Transfers to the Defendants and the

incurring of the obligation of the Agreement, the Debtor was insolvent or became insolvent as a

result of the Total Transfers and incurring of the obligation of the Agreement.

50.     At the time(s) of the Total Transfers, the Debtor was indebted to creditors in an amount in excess of the Total Transfers and any debt created by virtue of incurring the obligation of the Agreement.

51.     As a result of the Transfers and the incurring of the obligation of the Agreement, the Trustee has been damaged pursuant to 11 U.S.C. § 544(b) for the total value of the Transfers and any debt created by incurring the obligation of the Agreement.

52.     The Defendants were the initial transferee or the entity for whose benefit the Total Transfers were made whereby the Plaintiff is entitled to recover the Total Transfers pursuant to 11 U.S.C. §550(a)(1).  Alternatively, the Defendants were the immediate or mediate transferee of the initial transferee for whose benefit the Total Transfers were made, and, as a result, the Plaintiff is entitled to recover the Total Transfers pursuant to 11 U.S.C. §550(a)(2).  In regard to the incurring of the obligation of the Agreement the proper and appropriate relief would be the setting aside and avoidance of the incurring of such obligation.

WHEREFORE, the Plaintiff, Soneet R. Kapila, Trustee in Bankruptcy for Wasim Shomar, by and through undersigned counsel, respectfully requests that the Court enter a judgment setting aside, avoiding and recovering the Total Transfers, thus entering judgment against against Defendant, Rania Yousef, in the amount of $548,803.24, against Defendant, Sabah Barakat, in the total amount of $75,860.00, further, that the Court set aside and avoid the incurring of the obligation of the Agreement thus finding same to be of no force and effect, plus award court costs and interest, plus such other and further relief as the Court deems just and proper.

### COUNT V - RECOVERY OF AVOIDED TRANSFERS PURSUANT TO 11 U.S.C. §550

53.     The Plaintiff realleges paragraphs 1 through 21 as if fully set forth herein.

54.     The Total Transfers occurred pre-petition within four (4) years prior to the Petition Date.

55.     Within four (4) years the Debtor transferred a total amount of $548,803.24 to or/on behalf of Defendant, Rania Yousef.

56.     Within four (4) years of the Debtor's filing, the Debtor transferred a total of $75,860.00 to or behalf of Defendant, Sabah Barakat.

57.     This count is pled as an effectuating count whereby to whatever extent the Court deems it necessary for the Plaintiff to specifically seek to recover any avoided Total Transfers pursuant to a separately pled count, this count is being separately pled.

58.     Upon the Court setting aside and avoiding the Total Transfers referenced in the preceding counts, for any amount either more or less than $624,663.24, the Plaintiff seeks to recover such Total Transfers pursuant to 11 U.S.C. §550. To whatever extent the Court determines that some form of recovery is necessary in regard to the setting aside and avoidance of the incurring of the obligation of the Agreement, the Trustee seeks same herein.

WHEREFORE, the Plaintiff, Soneet R. Kapila, as Trustee in Bankruptcy for Wasim Shomar, by and through undersigned counsel, respectfully requests that the Court enter judgment setting aside, avoiding and recovering the Total Transfers, thus entering judgment against Defendant, Rania Yousef, in the amount of $548,803.24, and against Defendant, Sabah Barakat, in the total amount of $75,860.00, the Plaintiff is entitled to recover the Total Transfers from the Defendants pursuant to 11 U.S.C. §550(a)(1) and obtain any recovery deemed necessary based upon the setting aside and avoidance of the incurring of the obligation of the Agreement or alternatively, that the Court enter judgment finding that  the Defendants are the immediate or

mediate transferee of the initial transferee for whose benefit the Total Transfers were made, and as a result, the Plaintiff is entitled to recover the Total Transfers as referenced above from the Defendants pursuant to 11 U.S.C. §550(a)(2) and obtain any recovery deemed necessary based upon the setting aside and avoidance of the incurring of the obligation of the Agreement.

## COUNT VI - RESULTING TRUST

59.     The Plaintiff alleges paragraphs 1 through 21 as if fully pled herein.

60.     This is an action to establish a resulting trust against the Real Property located at 8915 Bergenwood Avenue, Apt. 5 a/k/a Apt. 16, North Bergen, New Jersey  07047 (the "Real Property").   The Real Property is more particularly described as:

**ALL that (those) certain lots(s), tract(s) or parcel(s) of land, with the buildings and improvements thereon erected situate lying and being in the Township of North Bergen, County of Hudson, and State of New Jersey and is bounded and described as follows:**

**BEING known and designated as Unit No. 16, Parking Space 22, situated in Bell Crest Courtyard, a condominium, together with 0.901 and 0.1777% undivided interest in the Common Elements of said Condominium in accordance with and subject to the terms, limitations, conditions, covenants, restrictions, easemets, agreements and other provisions set forth in the Master Deed, which was dated 11/28/2001 and recorded 11/29/2001 in the Office of the Clerk of Hudson County in Deed Book 5903, Page 56, as amended in Deed Book 5927, Page 241 and Deed Book 5963, Page 153 as the same may now or hereafter be lawfully amended.**

**BEING known as Tax Lot 1, Qualifier C0016, C022, in Tax Block 413, on the Official Tax Map of the Township of North Bergen.**

61.     As testified by the Defendant, Ms. Yousef, at her Rule 2004 Examination, and supported by financial records obtained by the Trustee, there are total transfers traceable to the Debtor in the amount of $180,000.00 that was used to purchase the Real Property, including funds in the amount of $130,000.00 used by Ms. Yousef to purchase her interest in the Real Property under the name of Ms. Barakat all with specific fraudulent intent.

62.     More specifically, the defendant, Ms. Yousef testified that she used funds transferred to her from the Debtor in the total amount of $130,000.00 to pay the balance of the purchase price for the Real Property.  These transfers can be traced as funds directly from the Debtor's bank accounts and/or credit cards.

63.     A resulting trust may be imposed against real property to right a wrong committed and to prevent unjust enrichment of one person at the expense of another either as a result of fraud, undue influence, abuse of confidence or mistake in the transaction.

64.     A resulting trust is needed to prevent unjust enrichment of the Defendants who acquired the Real Property through fraud or other questionable means. The imposition of a resulting trust is needed to prevent fraud and/or injustice. All funds used by the Defendants to purchase the Real Property are the results of actual and constructive fraudulent transfers from the Debtor, as alleged more specifically above.

65.     Equity and justice dictate that it would be unconscionable for the Defendants to retain the benefit of the Debtor's assets.

66.     The Trustee seeks a ruling from the Court imposing a trust and/or an equitable lien against the Real Property in the amount of $180,000.00, with the authority to foreclose same within the Bankruptcy Court, such that the Trustee can administer the Real Property for the benefit of the estate.

WHEREFORE, the Plaintiff, Soneet R, Kapila, Trustee in Bankruptcy for Wasim Shomar, by and through undersigned counsel, seeks a ruling by the Court imposing a trust and/or an equitable lien against the Real Property in the amount of $180,000.00, with the authority to foreclose same within the Bankruptcy Court, along with an award for interest and costs of this proceeding, plus such other and further relief as the Court deems just and proper.

## COUNT VII - CONSTRUCTIVE TRUST

67.     The Plaintiff alleges paragraphs 1 through 21 as if fully pled herein.

68.     This is an action to establish a constructive trust against the Real Property located at 8915 Bergenwood Avenue, Apt. 5 a/k/a Apt. 16, North Bergen, New Jersey  07047.

69.     As testified by the Defendant, Ms. Yousef, at her Rule 2004 Examination, and supported by financial records obtained by the Trustee, there are total transfers traceable to the Debtor in the amount of $180,000.00 that was used to purchase the Real Property, including funds in the amount of $130,000.00 used by Ms. Yousef to purchase her interest in the Real Property under the name of Ms. Barakat all with specific fraudulent intent.

70.     More specifically, the defendant, Ms. Yousef testified that she used funds transferred to her from the Debtor in the total amount of $130,000.00 to pay the balance of the purchase price for the Real Property.  These transfers can be traced as funds directly from the Debtor's bank accounts and/or credit cards.

71.     A constructive trust may be imposed against Real Property to right a wrong committed and to prevent unjust enrichment of one person at the expense of another either as a result of fraud, undue influence, abuse of confidence or mistake in the transaction.

72.     The Defendants' interest in the Real Property acquired an advantage over other creditors that have filed claims in this estate.

73.     A constructive trust is needed to prevent unjust enrichment of the Defendant who acquired the Real Property through fraud or other questionable means. The imposition of a constructive trust is needed to prevent fraud and/or injustice.

74.     Equity and justice dictate that it would be unconscionable for the Defendants to retain the benefit of the Debtor's assets.

75.    The Trustee seeks a ruling from the Court imposing a trust and/or an equitable lien against the Real Property in the amount of $180,000.00, with the authority to foreclose same within the Bankruptcy Court, such that the Trustee can administer the Real Property for the benefit of the estate.

WHEREFORE, the Plaintiff, Soneet R. Kapila, Trustee in Bankruptcy for Wasim Shomar, by and through undersigned counsel, seeks a ruling by the Court imposing a trust and/or an equitable lien against the Real Property in the amount of $180,000.00, with the authority to foreclose same within the Bankruptcy Court, along with an award for interest and costs of this proceeding, plus such other and further relief as the Court deems just and proper.

## COUNT VIII - EQUITABLE LIEN

76.    The Plaintiff alleges paragraphs 1 through 21 as if fully pled herein.

77.    This is an action to establish an equitable lien on the Real Property located at 8915 Bergenwood Avenue, Apt. 5 a/k/a Apt. 16, North Bergen, New Jersey  07047.

78.    As testified by the Defendant, Ms. Yousef, at her Rule 2004 Examination, and supported by financial records obtained by the Trustee, there are total transfers traceable to the Debtor in the amount of $180,000.00 that was used to purchase the Real Property, including funds in the amount of $130,000.00 used by Ms. Yousef to purchase her interest in the Real Property under the name of Ms. Barakat all with specific fraudulent intent.

79.    More specifically, the defendant, Ms. Yousef testified that she used funds transferred to her from the Debtor in the total amount of $130,000.00 to pay the balance of the purchase price for the Real Property.  These transfers can be traced as funds directly from the Debtor's bank accounts and/or credit cards.

80.    An equitable lien may be imposed against the Real Property where an asset is

obtained through fraud or egregious conduct was used to invest in, purchase or improve the asset. The basis of equitable liens may be estoppel or unjust enrichment, including family members or those with close personal relationships.

81.    The Defendants knew at all such times relevant to this proceeding that the Debtor had substantial unpaid creditors that have filed claims in this estate and that they were obtaining funds that were the result of actual and constructively fraudulent transfers. The Defendants were not good faith transferees without knowledge of the avoidability of any of the transfers which were used to purchase the Real Property.

82.    The Defendants are currently enjoying the benefit of the Real Property.

83.    Equity and justice dictate that it would be unconscionable for the Defendants to retain the benefit of the Debtor's assets.

84.    An equitable lien is needed to prevent unjust enrichment of the Defendants, who acquired the Real Property through fraud or other questionable means. An equitable lien is needed to prevent the unjust enrichment of the Defendants over the Debtor's creditors that have filed claims in this estate.

WHEREFORE, the Plaintiff, Soneet R. Kapila, Trustee in Bankruptcy for Wasim Shomar, by and through undersigned counsel, seeks a ruling by the Court imposing a trust and/or an equitable lien against the Real Property in the amount of $180,000.00, with the authority to foreclose same within the Bankruptcy Court, along with an award for interest and costs of this proceeding, plus such other and further relief as the Court deems just and proper.

## COUNT IX - OBJECTION TO PROOF OF CLAIM

85.    The Plaintiff re-alleges paragraphs 1 through 21 as if fully set forth herein.

86.    This is an action objecting to proof of claim no. 14-1 in the amount of $102,726.19

filed by Rania Yousef against the Debtor pursuant to 11 U.S.C. §502(d) and Bankruptcy Rule 3007. A true and correct copy is attached hereto as "Exhibit 3" (the "Proof of Claim").

87.     The Proof of Claim has now been amended, and in turn, replaced with an amended claim. This action is now also objecting to the amended proof of claim no. 14-2 in the amount of $120,000.00, filed by Rania Yousef against the Debtor pursuant to 11 U.S.C. §502(d) and Bankruptcy Rule 3007. A true and correct copy is attached hereto as "Exhibit 4" (the "Amended Proof of Claim"). The Amended Proof of Claim seeks priority status pursuant to 11 U.S.C. §507(a)(1)(A) or (a)(1)(B) and 11 U.S.C. §101(14A).

88.     The Trustee objects to the allowance of the Amended Proof of Claim in any respect. It is not entitled to priority status pursuant to 11 U.S.C. §507(a)(1)(A) or (a)(1)(B) and 11 U.S.C. §101(14A) for several reasons, including the fact that the Debtor was not divorced from Ms. Yousef as of the date of the bankruptcy filing. Whether or not Ms. Yousef can assert between herself and the Debtor that she is entitled to assert that any debt to her is non-dischargeable does not mean that such debt is a priority claim within the bankruptcy estate.

89.     At this point in time, the Mahr Agreement upon which Ms. Yousef relies must be filed with the Court as there is no legal basis for same to be under seal as the Court must be able to not only review the Mahr Agreement, but portions of it may need to be cited within the Court's ruling. The Trustee would also need to cite to specific provisions within the Mahr Agreement in support of an Amended Complaint. It is not possible for a ruling within this action to be under seal. Further, it would be prejudicial to the Trustee to allow Ms. Yousef to file just those portions of the record from her divorce proceeding, being the State Court Agreed Amended Final Judgment, yet disallow the Trustee from relying upon other relevant filings. The Trustee is separately seeking to file same as Exhibit "5" upon entry of a Court order allowing the filing of this Amended

Complaint.  The Trustee also reserves the right to further amend this Complaint once specific provisions of the Mahr Agreement can be cited within a pleading before this Cout.

90.     In support of the Amended Proof of Claim, Ms. Yousef cites to only portions of this Court's *Order Granting Motion of Creditor and Debtor's Wife, Rania Yousef, for Relief from the Automatic Stay* ("Stay Relief Order") within the main case at ECF Number 105. The full ruling, with emphasis added, is:

1.     The Motion is GRANTED.

2.     The automatic stay is lifted as to Rania Yousef, who may proceed with the Marital Dissolution Case to the extent provided in this Order.

3.     The Family Court may:

A.     Determine, with respect to the Agreement, as that term is defined in the Motion, whether:

(i)     The Agreement is valid, binding and enforceable and, if the Family Court makes such a finding, ratify and approve the Agreement and incorporate its terms into its final judgment, and

(ii)     Whether any award to Ms. Yousef in the final judgment constitutes a domestic support obligation solely for purposes of the Marital Dissolution Case, which **shall not constitute an adjudication within this Court**, and enter a final judgment for the proper amount,

B.     Determine whether temporary support or alimony to Ms. Yousef from the date of separation and entry of judgment for same is proper and award same **solely for purposes of the Marital Dissolution Case**, **which shall not constitute an adjudication within this Court, including that it shall not constitute an**

**adjudication that any award of support or alimony is or is not an unmatured debt on the date of the filing of the bankruptcy petition for purposes of 11 U.S.C. §502(b)(5),**

C.    Determine what constitutes marital and non-marital assets and equitably distribute marital assets. However, the Family Court **shall not determine what constitutes property of the bankruptcy estate**, such determination being reserved solely to the Bankruptcy Court, including, but not limited to, the determination as to the respective interests between the estate, Rania Yousef and Virginia Shomar to the funds in the amount of $657,003.44 that are the subject of the adversary proceeding brought by the Trustee Adversary Case Number 21-01267-AJC, nor shall the Family Court distribute assets which are property of the bankruptcy estate unless and until such assets are abandoned by the Trustee.

D.    Determine whether Ms. Yousef is entitled to an award of her incurred temporary and final attorney's fees related to the Marital Dissolution Case and enter final judgment against Debtor for the proper amount,

E.    Determine solely for purposes of the Marital Dissolution Case whether the Parties have any joint debts or liabilities and apportion same, and

F.    Enter a final judgment of dissolution of marriage incorporating the Family Court's findings of fact and conclusions of law.

4.    The Family Court is authorized to order the bifurcation of the Marital Dissolution Case and enter a final judgment of dissolution of marriage and reserve jurisdiction to determine all other issues,

5.    **The Family Court may not determine whether any judgment it enters**

**constitutes an allowed claim, a priority claim or is in the nature of support in this bankruptcy case, such determinations being reserved to the Bankruptcy Court;** and

6.    Rania Yousef may not proceed to enforce any judgment entered by the Family Court without further order of the Bankruptcy Court.

91.    Based upon the clear language of the Stay Relief Order, the adjudication of the State Court is not an adjudication of anything in regard to the nature, amount or priority of the Amended Proof of Claim. Any argument by Ms. Yousef to the contrary would be a violation of the automatic stay. The law is clear that "..the Code does not even permit the filing of a proof of claim for postpetition domestic support obligations". *In re Young*, 497 B.R. 904, 917 (Bankr. W.D. Ark 2013), citing, *In re Burnett*, 646 F.3d 582 (8th Cir. 2011); See also, *In re Little*, 634 B.R. 784 (Bankr.E.D.Ark 2021); *In re Brancato*, 2023 WL 5127334 (Bankr.E.D.N.Y August 9 , 2023).  As an unmatured debt, the Amended Proof of Claim must be disallowed pursuant to, among other provisions of the Bankruptcy Code, 11 U.S.C. §502(b)(5).

92.    Additionally, there is no legal basis warranting an allowance of neither the Proof of Claim, nor the Amended Proof of Claim, sought by Rania Yousef pursuant to the Agreement as same would be an illegal and unenforceable contract within the State of Florida and pursuant to federal law. Further, to whatever extent necessary, the Trustee has sought an avoidance of the Agreement as a fraudulent transfer within the preceding counts, which would be additional grounds to disallow any proof of claim, or amendment thereto, filed by Rania Yousef.

93.    Pursuant to 11 U.S.C. §502(b) the Court shall disallow any claim of any entity from which property is recoverable under §§542, 543, 550, or 553 of title 11 or that is a transferee of a transfer avoidable under §§522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of title 11 unless such entity or transferee has paid the amount, or turned over an such property, for which such entity or

transferee is liable under §§522(i), 542, 543, 550, or 553 of title 11. Notwithstanding all other grounds to disallow the Defendant's claims, unless and until the Defendant turns over all sums due and owing to the estate, her Proof of Claim and Amended Proof of Claim must be disallowed.

94. Accordingly, Plaintiff objects to Rania Yousef's Claim Nos. 14-1 and 14-2 in their entirety and seeks a judgment disallowing these claims and any further amendments thereto against the Debtor's estate.

WHEREFORE, the Plaintiff respectfully requests this Court to enter an order disallowing Rania Yousef's Claim Nos. 14-1 and 14-2 in their entirety and grant such other and further relief as the Court deems just and proper.

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

Dated: November 7, 2023    **GREENSPOON MARDER, LLP**

          */s/ Michael R. Bakst*
          **Michael R. Bakst, Esq.**
          **Florida Bar No.: 866377**
          **Attorneys for the Trustee**
          **525 Okeechobee Blvd., Suite 900**
          **West Palm Beach FL 33401**
          **Telephone: (561) 838-4523**
          **Michael.bakst@gmlaw.com**

**EXHIBIT "1"**

| | Payor | Date | Payee | Amount |
|---|---|---|---|---|
| **2 year transfers on behalf of or for Rania Yousef** | | | | |
| | | | | |
| CC Charge | WS CC | 09/18/18 | Roche Bobois | $9,486.75 |
| CC Charge | WS CC | 09/27/18 | China Cabinet | $975.00 |
| CC Charge | WS CC | 10/01/18 | Dior | $1,273.30 |
| CC Charge | WS CC | 10/01/18 | Zadig & Voltaire | $663.40 |
| CC Charge | WS CC | 10/01/18 | Louis Vuitton | $3,488.20 |
| CC Charge | Universal Lynx | 10/13/18 | Saks | $3,049.50 |
| CC Charge | WS CC | 10/31/18 | Dior | $2,899.70 |
| CC Charge | Universal Lynx | 12/22/18 | Givenchy | $593.85 |
| CC Charge | Universal Lynx | 12/22/18 | Desigual | $382.12 |
| CC Charge | Universal Lynx | 12/22/18 | Gucci | $952.30 |
| CC Charge | Universal Lynx | 12/22/18 | Designer Eyes | $273.49 |
| CC Charge | Universal Lynx | 12/23/18 | Flavio Castellani | $1,253.08 |
| Bank Transaction | Wire | 11/29/2018 | Rania Yousef | $15,000.00 |
| Bank Transaction | Wire | 01/07/19 | Rania Yousef | $4,000.00 |
| Bank Transaction | Wire | 02/04/19 | Rania Yousef | $20,000.00 |
| **Total** | | | | **$64,290.69** |


| | Payor | Date | Payee | Amount |
|---|---|---|---|---|
| **2 year transfers on behalf of or for Sabah Bakarat** | | | | |
| | | | | |
| CC Charge | WS CC | 3/2/2019 | Stephan Baker, MD | $18,060.00 |
| Bank Transaction | Wire | 10/10/2019 | Rania-Sabah Rakarat | $10,000.00 |
| Bank Transaction | Wire | 1/14/2020 | Cozy Services | $2,600.00 |
| Bank Transaction | Check | 1/16/2020 | Rania-Sabah Rakarat | $50,000.00 |
| Bank Transaction | Wire | 2/11/2020 | Cozy Services | $2,600.00 |
| Bank Transaction | Wire | 3/10/2020 | Cozy Services | $2,600.00 |
| **Total** | | | | **$85,860.00** |

**EXHIBIT "2"**

| Classification | CC / Type | Date | Company | Amount |
|---|---|---|---|---|
| | | 4 year Transfers on behalf or to Rania Yousef and Sabah Bakarat | | |
| CC Charge | WS CC | 09/18/18 | Roche Bobois | 9,486.75 |
| CC Charge | WS CC | 09/27/18 | China Cabinet | 975.00 |
| CC Charge | WS CC | 10/01/18 | Dior | 1,273.30 |
| CC Charge | WS CC | 10/01/18 | Zadig & Voltaire | 663.40 |
| CC Charge | WS CC | 10/01/18 | Louis Vuitton | 3,488.20 |
| CC Charge | Universal Lynx | 10/13/18 | Saks | 3,049.50 |
| CC Charge | WS CC | 10/31/18 | Dior | 2,899.70 |
| CC Charge | Universal Lynx | 12/22/18 | Givenchy | 593.85 |
| CC Charge | Universal Lynx | 12/22/18 | Desigual | 382.12 |
| CC Charge | Universal Lynx | 12/22/18 | Gucci | 952.30 |
| CC Charge | Universal Lynx | 12/22/18 | Designer Eyes | 273.49 |
| CC Charge | Universal Lynx | 12/23/18 | Flavio Castellani | 1,253.08 |
| CC Charge | WS CC | 01/02/19 | Bergdorf Goodman | 3,538.44 |
| CC Charge | WS CC | 01/03/19 | Bergdorf Goodman | 923.26 |
| CC Charge | WS CC | 01/03/19 | Bergdorf Goodman | 7,524.36 |
| CC Charge | Universal Lynx | 01/09/19 | Erwin Pearl | 1,650.56 |
| CC Charge | Universal Lynx | 02/18/19 | Maxmara | 931.88 |
| CC Charge | WS CC | 02/19/19 | Roberto Cavalli | 1,895.19 |
| CC Charge | WS CC | 02/19/19 | Roberto Cavalli | 454.97 |
| CC Charge | WS CC | 02/20/19 | Bottega Veneta | 1,766.84 |
| CC Charge | WS CC | 02/20/19 | S. Ferragamo | 1,285.47 |
| CC Charge | Universal Lynx | 03/01/19 | Fendi | 909.50 |
| CC Charge | WS CC | 03/02/19 | Stephan Baker MD | 18,060.00 |
| CC Charge | WS CC | 03/16/19 | Saks | 2,771.30 |
| CC Charge | WS CC | 03/18/19 | Newman Marcus | 952.30 |
| CC Charge | WS CC | 04/04/19 | Traditional Jewelers | 17,078.38 |
| CC Charge | Universal Lynx | 04/14/19 | Michael Kors | 576.83 |
| CC Charge | Universal Lynx | 04/15/19 | Michael Kors | 449.17 |
| CC Charge | WS CC | 04/15/19 | Coach | 307.55 |
| CC Charge | WS CC | 04/15/19 | Maxmara | 3,722.39 |
| CC Charge | WS CC | 04/15/19 | S. Ferragamo | 2,580.51 |
| CC Charge | Universal Lynx | 04/23/19 | Saks | 749.00 |
| CC Charge | Universal Lynx | 04/26/19 | Saks | 2,282.31 |
| CC Charge | Universal Lynx | 04/29/19 | Bergdorf Goodman | 647.81 |
| CC Charge | Universal Lynx | 04/29/19 | Bergdorf Goodman | 4,730.62 |
| CC Charge | LEG CC | 05/11/19 | China Cabinet | 4,000.00 |
| CC Charge | Universal Lynx | 05/15/19 | Saks | 599.20 |
| CC Charge | Universal Lynx | 05/15/19 | Saks | 112.82 |
| CC Charge | Universal Lynx | 05/15/19 | Saks | 1,422.03 |
| CC Charge | LEG CC | 05/18/19 | Nordstrom | 2,878.30 |
| CC Charge | Universal Lynx | 05/19/19 | Christian Louboutin | 904.15 |
| CC Charge | Universal Lynx | 05/21/19 | Saks | 1,474.46 |
| CC Charge | Universal Lynx | 05/24/19 | Intermix | 318.88 |
| CC Charge | Universal Lynx | 05/24/19 | Coach | 288.90 |
| CC Charge | Universal Lynx | 05/24/19 | Coach | 288.90 |
| CC Charge | Universal Lynx | 05/31/19 | Saks | 2,154.44 |
| CC Charge | Universal Lynx | 06/03/19 | Saks | 406.60 |
| CC Charge | LEG CC | 06/06/19 | Danielli | 18,000.00 |
| CC Charge | Universal Lynx | 06/08/19 | Bergdorf Goodman | 3,388.19 |
| CC Charge | Universal Lynx | 06/14/19 | CH Carolina Herrera | 2,078.75 |
| CC Charge | Universal Lynx | 06/14/19 | Prada | 448.37 |
| CC Charge | Universal Lynx | 07/07/19 | Saks | 683.55 |
| CC Charge | Universal Lynx | 07/07/19 | Newman Marcus | 3,296.48 |
| CC Charge | Universal Lynx | 07/15/19 | Bergdorf Goodman | 2,863.42 |
| CC Charge | Universal Lynx | 09/10/19 | APM Miami | 943.00 |
| CC Charge | Universal Lynx | 09/17/19 | Saks | 759.70 |
| CC Charge | Universal Lynx | 10/04/19 | Saks | 929.57 |
| CC Charge | Universal Lynx | 10/04/19 | Saks | 429.34 |
| CC Charge | Universal Lynx | 10/04/19 | Saks | 406.80 |
| CC Charge | WS CC | 10/08/19 | Danielli | 7,000.00 |
| CC Charge | Universal Lynx | 10/12/19 | Desigual | 954.66 |

| CC Charge | Universal Lynx | 10/12/19 | DVF Studio | 1,388.86 |
|---|---|---|---|---|
| CC Charge | Universal Lynx | 10/12/19 | Swarovski | 324.75 |
| CC Charge | Universal Lynx | 10/12/19 | Swarovski | 608.78 |
| CC Charge | Universal Lynx | 10/13/19 | APM Miami | 723.00 |
| CC Charge | Universal Lynx | 10/14/19 | Newman Marcus | 1,273.30 |
| CC Charge | Universal Lynx | 10/15/19 | Michele Lopriore | 347.75 |
| CC Charge | Universal Lynx | 10/15/19 | Saks | 481.50 |
| CC Charge | Universal Lynx | 10/16/19 | Saks | 955.51 |
| CC Charge | Universal Lynx | 10/16/19 | Saks | 485.78 |
| CC Charge | Universal Lynx | 11/02/19 | Lauren Moshi | 582.00 |
| CC Charge | Universal Lynx | 11/07/19 | Scorch Soda | 2,226.67 |
| CC Charge | WS CC | 11/29/19 | Lola Cruz | 275.63 |
| CC Charge | WS CC | 11/29/19 | Saks | 561.75 |
| CC Charge | WS CC | 12/06/19 | Saks | 1,681.18 |
| CC Charge | WS CC | 12/06/19 | Saks | 615.25 |
| CC Charge | Universal Lynx | 12/23/19 | Furla | 666.61 |
| CC Charge | Universal Lynx | 12/23/19 | Nordstrom | 313.26 |
| CC Charge | Universal Lynx | 12/23/19 | Diesel | 819.19 |
| CC Charge | Universal Lynx | 12/31/19 | Bergdorf Goodman | (672.85) |
| CC Charge | Universal Lynx | 12/31/19 | Bergdorf Goodman | 3,364.24 |
| CC Charge | Universal Lynx | 01/25/20 | Michael Kors | 210.20 |
| CC Charge | Universal Lynx | 01/25/20 | R Lauren | 383.27 |
| CC Charge | Universal Lynx | 01/26/20 | Tory Buch | 325.50 |
| Bank Transaction | Wire | 11/29/18 | Rania Yousef | 15,000.00 |
| Bank Transaction | Wire | 01/07/19 | Rania Yousef | 4,000.00 |
| Bank Transaction | Wire | 02/04/19 | Rania Yousef | 20,000.00 |
| Bank Transaction | Wire | 05/06/19 | Rania Yousef | 3,000.00 |
| Bank Transaction | Wire | 05/07/19 | Rania Yousef | 3,000.00 |
| Bank Transaction | Wire | 05/13/19 | Rania Yousef | 5,000.00 |
| Bank Transaction | Wire | 05/23/19 | Rania Yousef | 10,000.00 |
| Bank Transaction | Wire | 06/03/19 | Rania Yousef | 2,000.00 |
| Bank Transaction | Check | 06/03/19 | Rania Yousef | 50,000.00 |
| Bank Transaction | Wire | 06/26/19 | Rania Yousef | 3,000.00 |
| Bank Transaction | Wire | 10/10/19 | Rania Yousef | 10,000.00 |
| Bank Transaction | Check | 10/22/19 | Rania Yousef | 5,400.00 |
| Bank Transaction | Wire | 01/14/20 | Cozy Services - Bakarat | 2,600.00 |
| Bank Transaction | Check | 01/16/20 | Rania Yousef | 50,000.00 |
| Bank Transaction | Wire | 02/11/20 | Bakarat | 2,600.00 |
| Bank Transaction | Wire | 03/10/20 | Bakarat | 2,600.00 |
| Bank Transaction | Wire | 03/17/19 | Jaes Jewelers | 150,000.00 |
| Jewelry Purchase | Receipts | 06/01/19 | Jaes Jewelers | 47,000.00 |
| Jewelry Purchase | Receipts | 06/10/19 | Jaes Jewelers | 6,819.22 |
| Jewelry Purchase | Receipts | 09/02/19 | Danielli | 32,000.00 |
| Jewelry Purchase | Receipts | 12/18/19 | Jaes Jewelers | 4,802.16 |
| Jewelry Purchase | Receipts | 12/18/19 | Jaes Jewelers | 19,790.89 |
| **Total** | | | | **624,663.24** |

**EXHIBIT "3"**

| Fill in this information to identify the case: |
| --- |

| Debtor 1 | Wasim Shomar |
| --- | --- |

| Debtor 2 (Spouse, if filing) | |
| --- | --- |

United States Bankruptcy Court for the: Southern District of Florida

| Case number | 21-11554 |
| --- | --- |

## Official Form 410
# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1: Identify the Claim

| 1. Who is the current creditor? | Rania Yousef |
| --- | --- |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor |

| 2. Has this claim been acquired from someone else? | ☑ No |
| --- | --- |
| | ☐ Yes. From whom? |

| 3. Where should notices and payments to the creditor be sent? | Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| --- | --- | --- |
| Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Carlos de Zayas, Esq. | |
| | Name | Name |
| | Lydecker Diaz, 1221 Brickell Ave., 19th Floor | |
| | Number        Street | Number        Street |
| | Miami                      FL           33131 | |
| | City                    State           ZIP Code | City                    State           ZIP Code |
| | Contact phone (305) 416-3180 | Contact phone |
| | Contact email cdz@lydeckerdiaz.com | Contact email |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

— — — — — — — — — — — — — — — — — — — — — — — —

| 4. Does this claim amend one already filed? | ☑ No | |
| --- | --- | --- |
| | ☐ Yes. Claim number on court claims registry (if known) _____ | Filed on ___ MM / DD / YYYY |

| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No |
| --- | --- |
| | ☐ Yes. Who made the earlier filing? |

Official Form 410        Proof of Claim        page 1

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___  ___  ___  ___

**7. How much is the claim?**  $_____102,726.19_. Does this amount include interest or other charges?

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Dower due on 1/16/2021 per the Premarital and Mahr Agreement***

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property: $_____

Amount of the claim that is secured: $_____

Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $_____

Annual Interest Rate (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition. $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☐ No | |
|---|---|---|
| | ☑ Yes. *Check one:* | **Amount entitled to priority** |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____102,726.19 |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:   Sign Below

| The person completing this proof of claim must sign and date it. FRBP 9011(b). | **Check the appropriate box:** |
|---|---|

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   08/11/2021
             MM / DD / YYYY

/s/ Carlos de Zayas
_____
    Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Carlos de Zayas | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Attorney for Creditor, Rania Yousef | | |
| Company | Lydecker Diaz | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 1221 Brickell Ave., 19th Floor | | |
| | Number        Street | | |
| | Miami | FL | 33131 |
| | City | State | ZIP Code |
| Contact phone | (305) 416-3180 | Email cdz@lydeckerdiaz.com | |

## PRE-JUDGMENT INTEREST ACCRUED FROM JANUARY 16, 2021 TO AUGUST 11, 2021

| Dates: | Amount Due: | Interest Rate: | Per Diem: | Interest Due: | Total Amount Due with Interest: |
|---|---|---|---|---|---|
| January 16, 2021 – August 11, 2021 (207 days) | $100,000 | 4.81% | $13.17 | $2,726.19 | $102,726.19 |

***The *Premarital and Mahr Agreement by and Between Rania Yousef and Wasim Shomar* (the "Agreement") has not been attached to the Proof of Claim because said Agreement is confidential. Ms. Yousef will provide a copy of the Agreement upon receipt of written consent from Mr. Shomar or his counsel or entry of a court order.

EXH. "A"

EXHIBIT "4"

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Wasim Shomar |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Southern District of Florida |
| Case number | 21-11554-CLC |

Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1:    Identify the Claim

| | |
|---|---|
| 1. Who is the current creditor? | Rania Yousef <br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor _____ |
| 2. Has this claim been acquired from someone else? | ☑ No <br> ☐ Yes. From whom? _____ |

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| c/o David W. Langley <br> Name <br> 8551 W Sunrise Blvd #303 <br> Number        Street <br> Plantation,        FL        33322 <br> City            State        ZIP Code <br><br> Contact phone 954-356-0450 <br> Contact email dave@flalawyer.com | Name <br><br> Number        Street <br><br> City            State        ZIP Code <br><br> Contact phone _____ <br> Contact email _____ |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

| | |
|---|---|
| 4. Does this claim amend one already filed? | ☐ No <br> ☑ Yes. Claim number on court claims registry (if known) 14      Filed on 08/11/2021 <br>      MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No <br> ☐ Yes. Who made the earlier filing? _____ |

**Part 2:**    **Give Information About the Claim as of the Date the Case Was Filed**

6. **Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

7. **How much is the claim?**  $ _____ 120,000.00   Does this amount include interest or other charges?

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Domestic Support Obligation Order from the Miami-Dade Circuit Ct

9. **Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**    $ _____

**Amount of the claim that is secured:**    $ _____

**Amount of the claim that is unsecured:**   $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**    $ _____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

10. **Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $ _____

11. **Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

---

Official Form 410        **Proof of Claim**        page 2

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☐ No | | **Amount entitled to priority** |
|---|---|---|---|

☑ Yes. *Check one:*

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).    $ **120,000.00**

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).    $ _____

☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).    $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).    $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).    $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies.    $ _____

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:    Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

**If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.**

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    09/18/2023
                     MM / DD / YYYY

/s/ David W. Langley
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | David W. Langley | | |
|---|---|---|---|
| | First name | Middle name | Last name |

| Title | |
|---|---|

| Company | Law Offices of David W. Langley |
|---|---|
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |

| Address | 8551 W. Sunrise Blvd., Suite 303 |
|---|---|
| | Number          Street |
| | Plantation, FL 33322 |
| | City                    State        ZIP Code |

| Contact phone | 954-356-0450 | Email dave@flalawyer.com |
|---|---|---|

## SUMMARY OF AMENDED PROOF OF CLAIM

Rania Yousef entered into a Premarital & Mahr[1] Agreement (the"Mahr") with the Debtor, Wasim Shomar, on May 30, 2019.  A copy of the Mahr has been provided to the Trustee and will be filed under seal if requested.

The Mahr became effective on the marriage of the parties on June 3, 2019. The Mahr defines as an "Operative Event" the "date on which either Party files a petition seeking to dissolve the Parties' marriage for any reason whatsoever in any court having jurisdiction over the Parties and their marriage".  It further provides that the Agreement governs "all matters relating to alimony, spousal support and/or maintenance of any type whatsoever".  The Operative Event, the filing of the Petition for Dissolution of Marriage, created an obligation to pay lump sum alimony. Rania Yousef filed a Petition for Dissolution of Marriage in the Circuit Court of Miami-Dade County, Florida (the "Family Law Court") on April 20, 2020. That filing triggered a binding obligation for the Debtor to pay Rania Yousef Lump Sum Alimony which has now been set by the Family Law Court at $120,000.00, plus interest at the statutory rate.

This Court granted stay relief to the parties to seek certain determinations in the Family Law Court. See ECF 105. In particular, this Court has deferred to the Circuit Court to determine:

> The Family Court may:
> A. Determine, with respect to the Agreement, as that term is defined in the Motion, whether:
> > (i) The Agreement is valid, binding and enforceable and, if the Family Court makes such a finding, ratify and approve the Agreement and incorporate its terms into its final judgment, and
> > (ii) Whether any award to Ms. Yousef in the final judgment constitutes a domestic support obligation solely for purposes of the Marital Dissolution Case, which shall

---

[1] A Mahr is traditional Islamic prenuptial contract.  *Parbeen v. Bari*, 337 So. 3d 343, 344 (Fla. Dist. Ct. App. 2022).

not constitute an adjudication within this Court, and enter a final judgment for the
proper amount,

…

F. Enter a final judgment of dissolution of marriage incorporating the Family Court's
findings of fact and conclusions of law.

The Family Law Court has now entered a Final Judgment in the case determining:


6. On May 30, 2019, the parties entered into a binding, valid and enforceable Premarital
and Mahr Agreement ("Agreement") under Florida law. The parties entered into a Joint Stipulation
for entry of an Agreed Amended Final Judgment of Dissolution of Marriage dated September 13,
2023 ("Joint Stipulation") which is attached as Exhibit "1" which the Court finds was entered into
freely and voluntarily by the parties with the advice of legal counsel. The Joint Stipulation resolves
all pending issues between the parties.

7. The Former Wife's filing of the Petition for Dissolution of Marriage on April 20, 2020
was an Operative Event as defined in the Agreement. This Operative Event gave rise to the Former
Husband's obligation to pay the Former Wife lump sum alimony in the sum of Three Hundred
Thousand Dollars ($300,000.00) which was due and owing as of that date.

8. As resolution to all pending issues in this matter and claims owed to the Former Wife
under the Agreement, the Former Husband has agreed pay to the Former Wife the sum of One
Hundred and Twenty Thousand Dollars ($120,000.00) plus statutory interest, as lump sum alimony
due to the Former Wife under the Agreement, all for which sums let execution issue forthwith.

The Final Judgment of Dissolution of Marriage is also attached.


"Whether an obligation is in the nature of support and qualifies as a DSO is a question of

federal law.  In determining whether an obligation constitutes a DSO, the Court looks to the

interpretation of DSOs in case law involving the dischargeability of debts under § 523(a)(5), as

enacted prior to the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA)". *In*

*re Krueger*, 457 B.R. 465, 474 (Bankr. D.S.C. 2011).  Prenuptial agreements have been held to

create non-dischargeable obligations.  See, for example, *In re Sparks* (There is nothing inherent in

an antenuptial agreement that would preclude payments made under such an agreement from being

in the nature of alimony, maintenance or support).

In this case the Trustee contends that the Mahr agreement does not qualify as a domestic support obligation (in addition to claiming it was a fraudulent transfer) because the family law case was not yet final on the Petition Date. However, the fact that the Family Law Case had not concluded by the Petition Date should not be an issue.  See, for example, *In re Sparks*, supra, in which the Court stated," Mrs. Sparks filed a proceeding to dissolve the marriage; that proceeding remains pending and unresolved".  *In re Sparks* at 484.  Despite the family law case not having concluded, the Sparks Court stated, "Moreover, so long as such agreements are enforceable under non-bankruptcy law, there is no equitable reason why they should not be given effect in bankruptcy according to the parties' intent *as of the time that intent was expressed*". *In re Sparks* at 486. (emphasis supplied). See also 11 U.S.C.A. § 101(14A), which defines Domestic Support Obligation as:

> (14A) The term "domestic support obligation" means *a debt that accrues before, on, or after the date of the order for relief in a case under this title*, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is--
>
> (A) owed to or recoverable by--
>
> (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
>
> (ii) a governmental unit;
>
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
>
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of--
>
> (i) a separation agreement, divorce decree, or property settlement agreement;
>
> (ii) an order of a court of record; or
>
> (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C.A. § 101 (West)(emphasis supplied).

In any event, the Family Law Court case is now final.  The Family Law Court found that the obligation to pay alimony accrued on the filing of the Petition for Dissolution of Marriage, which occurred pre-petition. The amount is now fixed.

Rania Yousef contends that the award of $120,000.00, plus interest at the statutory rate, represents alimony due from the Debtor pre-petition and is a first priority domestic support obligation pursuant to 11 USC § 101(14A) and § 507.  She amends her Proof of Claim to reflect the Family Law Court award of alimony in the appropriate amount.

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2020-006367-FC-04
SECTION: FC18
JUDGE: Abby Cynamon

**Yousef, Rania**

Petitioner(s)

vs.

**Shomar, Wasim**

Respondent(s)

_____/

## AGREED AMENDED FINAL JUDGMENT OF DISSOLUTION OF MARRIAGE AND ORDER ADOPTING JOINT STIPULATION FOR ENTRY OF AN AGREED AMENDED FINAL JUDGMENT OF DISSOLUTION OF MARRIAGE (DE #132)

   **THIS CAUSE** came before the Court upon the parties' Joint Stipulation for entry of an Agreed Amended Final Judgment of Dissolution of Marriage dated September 13, 2023 and the Court having previously entered a Partial Final Judgment of Dissolution of Marriage on February 23, 2022, and the Court having reviewed the Court file and being otherwise fully advised in the premises, makes the following findings of fact and conclusions of law:

1. This Court has jurisdiction over the subject matter and the parties hereto.

2. The Former Wife was a resident of the state of Florida for more than six (6) months prior to the filing of the Petition for Dissolution of Marriage.

3. The marriage between the parties, **RANIA YOUSEF** and **WASIM SHOMAR** is irretrievably broken.

4. The parties have no minor children born to this marriage. No children are contemplated or expected.

5. On February 23, 2022, the Court entered a Partial Final Judgment of Dissolution of Marriage which dissolved the parties' marriage.

6. On May 30, 2019, the parties entered into a binding, valid and enforceable Premarital and

Mahr Agreement ("Agreement") under Florida law. The parties entered into a Joint Stipulation for entry of an Agreed Amended Final Judgment of Dissolution of Marriage dated September 13, 2023 ("Joint Stipulation") which is attached as Exhibit "1" which the Court finds was entered into freely and voluntarily by the parties with the advice of legal counsel. The Joint Stipulation resolves all pending issues between the parties.

7. The Former Wife's filing of the Petition for Dissolution of Marriage on April 20, 2020 was an Operative Event as defined in the Agreement. This Operative Event gave rise to the Former Husband's obligation to pay the Former Wife lump sum alimony in the sum of Three Hundred Thousand Dollars ($300,000.00) which was due and owing as of that date.

8. As resolution to all pending issues in this matter and claims owed to the Former Wife under the Agreement, the Former Husband has agreed pay to the Former Wife the sum of One Hundred and Twenty Thousand Dollars ($120,000.00) plus statutory interest, as lump sum alimony due to the Former Wife under the Agreement, all for which sums let execution issue forthwith.

After due consideration of the aforementioned findings of fact and conclusions of law, it is

**ORDERED AND ADJUDGED THAT:**

A. The marriage between the parties, **RANIA YOUSEF** and **WASIM SHOMAR** is irretrievably broken, and the bonds of marriage have been dissolved and the parties have been restored to single status *nunc pro tunc* as to February 23, 2022.

B. The Court hereby ratifies and adopts the parties' Joint Stipulation dated September 13, 2023 and the parties are hereby ordered to comply with the terms therein. However, the Joint Stipulation shall not be merged in this Amended Agreed Final Judgment but shall survive same.

C. The parties' Premarital and Mahr Agreement dated May 30, 2019 is valid, enforceable and binding upon the parties under Florida law and the parties are hereby ordered to comply with the terms therein, except as modified by their Joint Stipulation dated September 13, 2023.

D. The Court will enter a separate money final judgment against the Former Husband and in favor of the Former Wife for the sum of $120,000.00 as lump sum alimony. This sum shall accrue post-judgment interest at the statutory rate.

E. The Court hereby retains jurisdiction over the parties, and the subject matter hereof, to enforce the terms and provisions of this Amended Agreed Final Judgment and the parties' Joint Stipulation and Premarital and Mahr Agreement, and for all purposes available in accordance with Florida law.

F. The Court hereby retains jurisdiction to adjudicate any charging liens by the law firm of Maria C. Gonzalez, P.A.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 14th day of September, 2023.

2020-006367-FC-04 09-14-2023 1:27 PM

_____
2020-006367-FC-04 09-14-2023 1:27 PM
Hon. Abby Cynamon

**CIRCUIT COURT JUDGE**
Electronically Signed

---

Final Order (Disposed by Judge)

THE COURT DISMISSES THIS CASE AGAINST ANY PARTY NOT LISTED IN THIS FINAL ORDER OR PREVIOUS ORDER(S). THIS CASE IS CLOSED AS TO ALL PARTIES.

---

**Electronically Served:**
Honorable Migna Sanchez-Llorens, 11thFC39@jud11.flcourts.org
Marcy S Resnik, mresnik@kr-lawyer.com
Marcy S Resnik, andi@kr-lawyer.com
Marcy S Resnik, sfurman@kr-lawyer.com
Maria C. Gonzalez, maria@gonzalezlawpa.com
Maria C. Gonzalez, martha@gonzalezlawpa.com
Maria C. Gonzalez, lexis@gonzalezlawpa.com
Paul L Orshan, paul@orshanpa.com
Paul L Orshan, seelenams@gmail.com
Rania Yousef, raniayousefdagh@gmail.com
The Honorable Abby Cynamon, 11thFC18@jud11.flcourts.org

**Physically Served:**

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT,
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

IN RE: The Marriage of:

**RANIA YOUSEF**         CASE NO. 2020-006367-FC-04
   Petitioner/Former Wife,     FAMILY DIVISION
and

**WASIM SHOMAR**
   Respondent/Former Husband.
_____/

### JOINT STIPULATION FOR ENTRY OF AGREED
### AMENDED FINAL JUDGMENT OF DISSSOLUTION OF MARRIAGE

  The parties, **RANIA YOUSEF** ("Former Wife") and **WASIM SHOMAR ("Former Husband")** by and through their undersigned counsel, hereby enter into this Joint Stipulation for entry of an Agreed Amended Final Judgment of Dissolution of Marriage and in support thereof state:

  1.  This Court has jurisdiction over the subject matter and the parties hereto.

  2.  On February 22, 2022 this Court entered a Partial Final Judgment of Dissolution of Marriage which dissolved the parties' marriage. The Court retained jurisdiction to determine all pending issues.

  3.  On May 30, 2019 the parties entered into a binding, valid and enforceable Premarital and Mahr Agreement (the "Agreement") under Florida law.

  4.  The Former Wife's filing of the Petition for Dissolution of Marriage on April 20, 2020 was an Operative Event as defined in the Agreement. This Operative Event gave rise to the Former Husband's obligation to pay the Former Wife lump sum alimony in the sum of Three Hundred Thousand Dollars ($300,000.00) which was due and owing as of that date.

  5.  As resolution to all pending issues in this matter and claims owed to the Former Wife under the Agreement, the Former Husband has agreed pay to the Former Wife the sum of One Hundred and Twenty Thousand Dollars ($120,000.00) plus statutory interest, as lump sum alimony due to the Former Wife under the Agreement, all for which sums let execution issue forthwith.

6.      The Former Husband (as Debtor) does not contest that the full sum of One Hundred and Twenty Thousand Dollars ($120,000.00) is a domestic relations obligation due to the Former Wife and that same is therefore non-dischargeable in bankruptcy.

7.      This sum shall accrue post-judgment interest at the statutory rate.

8.      Although this Stipulation and entry of an Agreed Amended Final Judgment of Dissolution of Marriage may be subject to approval by the bankruptcy Court, the Former Husband does not contest the entry of a Final Judgment by the bankruptcy Court which ratifies and adopts this Court's Agreed Amended Final Judgment of Dissolution of Marriage.

9.      Each party shall bear their own fees and costs incurred in this action.

10.     The parties shall submit an Amended Agreed Final Judgment of Dissolution of Marriage for entry by the Court ratifying and adopting the parties' Joint Stipulation.

11.     The parties agree the Court retains jurisdiction over the parties and the subject matter to enforce this Joint Stipulation and the Amended Agreed Final Judgment of Dissolution of Marriage.

**WHEREFORE**, the Parties respectfully request this Honorable Court ratify and approve the foregoing Joint Stipulation and entry of an Amended Agreed Final Judgment of Dissolution of Marriage.

## <u>CERTIFICATE OF SERVICE</u>

**WE HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished via eservice@myflcourtaccess.com to: Marcy Resnik, Esq., at: mresnik@kr-lawyer.com, sfurman@kr-lawyer.com and andi@kr-lawyer.com on this 13th day of September, 2023.

**KAHN & RESNIK, P.L.**
Attorneys for Former Husband
500 East Broward Boulevard
Suite 171
Fort Lauderdale, Florida 33394
Telephone: (954) 522-4129
mresnik@kr-lawyer.com


By:___s/Marcy S. Resnik_____
MARCY S. RESNIK
FBN 766062

**MARIA C. GONZALEZ, P.A.**
Attorneys for Former Wife
3350 SW 148th Ave, Suite 110
Miramar, FL 33027
Tel.: 954-874-1653
Email: maria@gonzalezlawpa.com
Secondary: martha@gonzalezlawpa.com


By: _*Maria C. Gonzalez*_____
MARIA C. GONZALEZ
B.C.S.
FBN: 844446

**EXHIBIT "5"**

# PREMARITAL AND MAHR AGREEMENT

## by and between

## RANIA YOUSEF

## and

## WASIM SHOMAR

CONFIDENTIAL

*RY*    *WS*

## PREMARITAL & MAHR AGREEMENT

This PREMARITAL & MAHR AGREEMENT (the "Agreement") is made and entered into as of this ____ day of May, 2019 by and between RANIA YOUSEF, a resident of Miami-Dade County, Florida ("RANIA"), and WASIM SHOMAR, also a resident of Miami-Dade County, Florida ("WASIM"). Each Party to this Agreement is sometimes referred to individually as a "Party" and, collectively, as the "Parties".

### RECITALS

A.     WASIM was previously married and has two adult children from his prior marriage. He is 52 years old. RANIA has never been married and she has no children. She is 38 years old.

B.     The Parties intend to marry each other on June 3, 2019 in accordance with Islamic law by participating in a Nikah, the Muslim ceremony of marriage. The Parties acknowledge to each other the importance of participating in this religious ceremony. However, and notwithstanding their participation in this ceremony, the Parties acknowledge that the religious ceremony has no legal significance unless and until the Parties, as planned, enter into a legally binding civil marriage after obtaining the required governmental license to marry.

C.     Prior to participating in the Nikah and being subsequently legally married, the Parties desire to enter into this Agreement in contemplation of their forthcoming civil marriage and intending to be bound by all its terms. Further, the Parties expressly and unequivocally confirm their intent and agreement that:

> ➢     The Agreement is a contract within Article I, Section 10 of the United States Constitution and the Constitution of the State of Florida and, as such, it shall not be impaired by any court but shall be binding upon the Parties at all times.

> ➢     The Agreement is a contract that complies with Florida contract law, including, but not limited to, all applicable Florida laws governing premarital agreements, including section 61.079 of the Florida Statutes (2018) (the "Act"). However, and to the extent not prohibited by the Act or other Florida law, this Agreement shall govern when inconsistent with or different from the provisions set forth in the Act or any other statute or law.

CONFIDENTIAL

RY   WS

> The Agreement also constitutes a binding Mahr Agreement between the Parties under Islamic law, satisfying the Islamic tenets of dower and sadaq, and enforceable by applying neutral principles of Florida contract law. As such, and as recognized by the courts in *Odatalla v Odatalla*, 810 A.2d 93 (N.J. Super. App. Div. 2002) and *Akileh v. Elchahal*, 666 So. 2d 246 (Fla. Dist. Ct. App. 1996), the enforcement of this Agreement (1) does not violate the First Amendment constitutional proscriptions on the establishment of a church or the free exercise of religion in the United States; and (2) does not require the application of any foreign law that violates the public policy of Florida as prohibited by section 61.0401 of the Florida Statutes (2018).

> Except for payments due under the Mahr Agreement, the Agreement provides between the Parties for their respective legal rights and obligations upon the occurrence of an Operative Event (as defined in the following sentence). For purposes of this Agreement, "Operative Event" means the earliest to occur of the following: (1) the death of either Party; or (2) the date on which either Party files a petition seeking to dissolve the Parties' marriage for any reason whatsoever in any court having jurisdiction over the Parties and their marriage.

> The Agreement (1) shall apply and govern the Parties' marital relationship, regardless of where the Parties are domiciled, upon the occurrence of the Operative Event; and (2) shall resolve all issues between them arising from their marital relationship, including, but not limited to, all matters relating to the interests and obligations of each with respect to her/his own, and the other Party's, Separate Property (as defined in section 4 below); Separate Indebtedness (as defined in section 5 below); and Joint Property (as defined in section 7 below); as well as all matters relating to alimony, spousal support and/or maintenance of any type whatsoever.

D. Each Party assures the other Party that she/he has had full opportunity to review and discuss the provisions of this Agreement, to ask questions and to otherwise be fully informed and fully advised of the meaning of this Agreement, its advantages and disadvantages, and of the rights and obligations of the Parties hereunder, with their respective legal counsel.

CONFIDENTIAL

RY    WS

E.      Each Party, having weighed all of the facts, conditions and circumstances likely to influence such Party's judgment, believes the Agreement to be fair, just, reasonable and adequate.

F.      Each Party also understands and acknowledges that she/he is giving up and waiving certain spousal rights in exchange for the provisions of this Agreement.

G.      Each Party freely and fully accepts the terms, conditions and provisions of this Agreement and each Party enters into this Agreement freely, voluntarily and without any coercion or duress whatsoever.

H.      This Agreement incorporates the entire understanding of the Parties and each Party agrees and represents to the other Party that no prior or contemporaneous oral statements or written matter of any type or sort extrinsic to this Agreement shall have any force or effect whatsoever.

I.      The Parties agree and each represents to the other that neither is relying on any agreement, promise, term, condition, understanding or representation, express or implied, other than those expressly set forth herein.

J.      Nothing in this Agreement restricts or forbids either Party (a) from giving gifts in the future to the other Party that shall be the receiving Party's Separate Property (see section 6 below); (b) from transferring assets to the other Party that shall be the receiving Party's Separate Property; and/or (c) from making provisions for the other Party in her/his estate plans and/or business succession plans with the intent to confer on the other Party additional benefits not otherwise provided for in this Agreement. However, and except as set forth elsewhere in this Agreement, the Parties desire through this Agreement to have the freedom and right to acquire whatever assets they choose to acquire; to incur whatever indebtedness they choose to incur; to make whatever business and financial decisions they want to make; and/or to distribute their respective estates to family members, charities and/or other third parties free from any claim by the other Party against her/his estate. Each Party's ability to achieve this goal and to ensure that her/his estate does not have to defend against any claims made by the other Party is one of the primary reasons for the Parties executing this Agreement. Each Party expressly acknowledges this intent on the other Party's behalf.

K.      The parties acknowledge and agree that the Recitals of this Agreement, enumerated A through K, are an integral part of this Agreement, that they are true and correct, and that they are accepted and agreed to by both Parties and incorporated herein as if fully set forth in the body of this Agreement.

CONFIDENTIAL

**NOW, THEREFORE**, in consideration of these recitals and the mutual covenants, agreements, consideration, representations and warranties contained in this Agreement, the receipt and/or sufficiency of which are hereby acknowledged, RANIA and WASIM, intending to be legally bound, do hereby covenant and agree as follows:

1.　　Effective Date of Parties' Marriage and This Agreement. The Parties' marriage and the provisions of this Agreement shall be effective immediately upon the Parties being legally married in Florida pursuant a license issued in accordance with, and as required by, section 741.08 of the Florida Statutes (2019) (the "Effective Date"); provided, however, that if the contemplated marriage between WASIM and RANIA is not solemnized in compliance with chapter 741 of the Florida Statutes prior to July 31, 2019, this Agreement shall be void *ab initio* and of no further force or effect.

2.　　Islamic Law Dower/Sadaq and Other Payments.

2.1.　　In accordance with Islamic law and as is customarily provided for in a Mahr Agreement, the Parties agree that WASIM shall give RANIA (a) "prompt" as dower the sum of US$50,000 at the Nikah ceremony, plus an additional US$150,000 paid over time as provided under subsection 2.2 below; and (b) "postponed" as sadaq the sum of US$300,000 within five (5) days after the entry of a final judgment by a court of competent jurisdiction dissolving the parties' marriage, if that ever occurs. So there is no misunderstanding, the US$300,000 sadaq payment is in addition to the US$200,000 dower.

2.2.　　The remaining US$150,000 of dower WASIM agrees to give RANIA, without conditions, pursuant to subsection 2.1 above shall be paid as follows: the sum of US$50,000 on or before January 16, 2020; and the sum of US$100,000 on or before January 16, 2021. So there is no misunderstanding, payment of the total US$200,000 of dower as set forth above by WASIM to RANIA under their Mahr Agreement is not contingent on a legal marriage.

3.　　Payment of Living Expenses During Marriage. Notwithstanding the fact that each Party is capable of being financially self-sufficient, the Parties agree and recognize that WASIM is possessed of substantial assets and income and, accordingly, has a greater financial ability to provide for the support and maintenance of the Parties during their marriage. Therefore, the Parties agree that WASIM shall provide a suitable marital residence for the Parties to reside together. WASIM shall also pay from his Separate Property (as defined in subsection 4.1 below) all of the primary joint living expenses of the Parties so long as they are married and residing together. The Parties agree that those joint living expenses shall include, but are not limited to: (a) groceries; (b) pet expenses including grooming and veterinary care; (c) dry cleaning and laundry

CONFIDENTIAL

RY　　WS

services for the Parties; (d) utilities for the principal residence including, but not limited to electricity, gas, sewer, water; (e) maintenance expenses related to the principal residence; (f) lawn and pool care expenses; (g) joint vacations; (h) joint meals outside the home; (i) joint gifts to third parties; (j) all expenses related to any children born to or adopted of the parties including but not limited to health insurance, and school and pre-school expenses; (k) homeowner's association or condo association fees and assessments related to the principal marital residence; (l) country club dues, fees, and assessments, if any; (m) furniture and furnishing for the principal marital residence; (n) any vehicles (including gas, insurance, maintenance, monthly premiums) owned or leased by the parties; (o) entertainment expenses; (p) any medical expenses of the parties (i.e., insurance premiums, co-payments, deductibles and uncovered expenses); and (q) grooming expenses.

4. <u>Separate Property</u>.

4.1. <u>Separate Property Defined</u>. The term "Separate Property", notwithstanding any statutory definition or other rule of law with respect to the meaning of such term, in this Agreement shall mean and include any and all legal and equitable interests a Party (the "Owner Party") has in any real and/or personal property, tangible or intangible, and choses in action, of whatever kind and wherever located and whenever acquired, and whether owned outright by the Owner Party, jointly with third parties, or held in trust. Without in any way limiting the generality of the definition contained in the foregoing sentence, the Owner Party's "Separate Property" includes:

> ➢ all professional degrees and licenses;

> ➢ all interests in financial accounts of any type whatsoever;

> ➢ all interests in partnerships, limited liability companies, corporations and other business entities, professional or otherwise;

> ➢ all interests in business or other joint ventures, whether or not the Owner Party is actively engaged therein;

> ➢ all interests in all retirement benefits and accounts;

> ➢ all property acquired by the Owner Party as a result of dower, sadaq or pursuant to the Parties' Mahr Agreement;

CONFIDENTIAL

RY        WS

> ➤ all property acquired by the Owner Property as a gift received from the other Party (see section 6 below);

> ➤ all interests that the Owner Party lists on the Owner Party's schedule of assets attached to this Agreement;

> ➤ all income of whatever nature, whether earned or unearned, heretofore or hereafter accrued or received, whether as an employee, partner, member, shareholder, employer or self-employed person (including, without limitation, salaries from any employment or occupation, wages, fees for services, professional fees, payments under contracts for services, royalty payments, payments on copyrights and renewal rights, partnership and/or member distributions, shareholder distributions, distributions from professional corporations and the like, payments under pension plans, payments under contracts of insurance, payments under individual retirement accounts and under deferred compensation plans, dividends, interest, etc.);

> ➤ all property otherwise acquired by the Owner Party prior to the Parties' marriage;

> ➤ all property acquired by the Owner Party on or after the Effective Date, whether owned outright by the Owner Party, or held in an irrevocable or revocable trust or other entity for the benefit of the Owner Party;

> ➤ all property acquired by the Owner Party, whether before or after the Effective Date, which is owned jointly with another person (other than the other Party) or entity;

> ➤ all property acquired by the Owner Party, whether before or after the Effective Date, by bequest, devise, gift or inheritance from any third party or source, whether owned outright or held in one or more trusts created by others for the benefit of the Owner Party;

> ➤ all property acquired by the Owner Party in exchange or as a substitute for Separate Property;

CONFIDENTIAL

RY    WS

➢ all property representing an appreciation in the value of Separate Property, whether passive or active, and regardless of whether the appreciation in value is attributable, or can be attributed, to the labor of either Party or both Parties; and

➢ all income from and accretions to Separate Property.

### 4.2. Ownership of Separate Property.

4.2.1. Ownership of RANIA's Separate Property. Except as otherwise expressly provided in this Agreement, RANIA shall at all times own RANIA's Separate Property, in each instance free and clear of any and all claims by WASIM and with full power to sell, transfer, devise, assign, give or otherwise use, dispose of or designate the same (and, in the case of insurance policies and retirement accounts and benefits, the unqualified right and power to change beneficiaries) as fully and effectively as she desires, in all respects and for all purposes.

4.2.2. Ownership of WASIM's Separate Property. Except as otherwise expressly provided in this Agreement, WASIM shall at all times own WASIM's Separate Property, in each instance free and clear of any and all claims by RANIA and with full power to sell, transfer, devise, assign, give or otherwise use, dispose of or designate the same (and, in the case of insurance policies and retirement accounts and benefits, the unqualified right and power to change beneficiaries) as fully and effectively as he desires, in all respects and for all purposes.

4.3.    Release of Interests. Consistent with subsection 4.2.1 above, and except as otherwise expressly provided in this Agreement, WASIM hereby irrevocably disclaims and releases any and all claims of right, title and interest, legal or equitable, in which he has or may acquire in and to any and all of RANIA's Separate Property, wherever located, and in which RANIA currently has or may hereafter acquire a whole or partial interest. Similarly, and consistent with subsection 4.2.2 above, RANIA hereby irrevocably disclaims and releases any and all claims of right, title and interest, legal or equitable, in which she has or may acquire in and to any and all of WASIM's Separate Property, wherever located, and in which WASIM currently has or may hereafter acquire a whole or partial interest.

4.4.    Responsibility for Separate Property. Each Party shall be solely responsible for the financial cost or expense to own, maintain, or possess any Separate Property in which such Party now has or may hereafter acquire a whole or partial interest, as well as all past, present and future ownership burdens thereof, including, without limitation, all expenses incident thereto and,

CONFIDENTIAL

RY    WS

notwithstanding any other provision of this Agreement, all Separate Indebtedness (as defined in section 5 below) of whatever type or nature arising out of the ownership of any whole or partial interest in any and all Separate Property owned by such Party. Consistent with the foregoing sentence, each Party shall indemnify and hold the other Party harmless from and against any of her/his past, present or future Separate Indebtedness (as defined in section 5 below).

### 4.5. Specific Waiver of Homestead Rights.

4.5.1. WASIM's Waiver of Homestead Rights. Specifically, and without limitation, WASIM acknowledges and agrees that he waives any homestead rights that he has or may have under Florida law, or any other state's or country's laws, in any home or residence that constitutes RANIA's Separate Property. Similarly, WASIM acknowledges and agrees that he waives any right to exclusive use and possession that he has or may have under Florida law, or any other state's or country's laws, in any home or residence that constitutes RANIA's Separate Property. This is a waiver with the intent of protecting RANIA's home or residence that constitutes her Separate Property.

4.5.2. RANIA's Waiver of Homestead Rights. Specifically, and without limitation, RANIA acknowledges and agrees that she waives any homestead rights that she has or may have under Florida law, or any other state's or country's laws, in any home or residence that constitutes WASIM's Separate Property. Similarly, RANIA acknowledges and agrees that she waives any right to exclusive use and possession that she has or may have under Florida law, or any other state's or country's laws, in any home or residence that constitutes WASIM's Separate Property. This is a waiver with the intent of protecting WASIM's home or residence that constitutes his Separate Property.

4.5.2.1. Effect of Parties Residing Together In A Residence Owned By WASIM. Without in any manner affecting WASIM's sole ownership of any home or residence in his name and constituting his Separate Property, WASIM agrees as follows: In the event the Parties are residing together as a married couple in a home owned solely by WASIM as of the date of an Operative Event, RANIA shall be given a reasonable period of time, not to exceed six (6) months, to vacate the marital residence owned by WASIM.

### 5. Separate Indebtedness.

5.1. Separate Indebtedness Defined. The term "Separate Indebtedness" shall mean all financial and other obligations of any and all types whatsoever, contingent or otherwise, which in accordance with generally accepted accounting principles are owed in whole or in part by either RANIA or WASIM, as the case may be, to a third party or third parties.

CONFIDENTIAL

RY                    WS

5.2.    WASIM's Responsibility for His Separate Indebtedness. WASIM is solely responsible for paying or satisfying all his Separate Indebtedness whether or not such Separate Indebtedness was incurred or accrued before or after the Effective Date, and whether or not the indebtedness belongs to a company in which WASIM owns an interest. Consistent with this provision, WASIM expressly and unequivocally confirms that RANIA shall never be, or become, responsible for any of his personal or business-related Separate Indebtedness.

5.3.    RANIA's Responsibility for Her Separate Indebtedness. RANIA is solely responsible for paying or satisfying all her Separate Indebtedness whether such Separate Indebtedness was incurred or accrued before or after the Effective Date.

5.4.    Undischarged Separate Indebtedness by WASIM. Consistent with subsection 5.2 above, WASIM shall at all times hold RANIA harmless and indemnified from and against any and all Separate Indebtedness incurred or accrued by him (personally or business-related), including all reasonable attorneys' fees and related expenses incurred defending against a claim relating to WASIM's Separate Indebtedness.

5.5.    Undischarged Separate Indebtedness by RANIA. Consistent with subsection 5.3 above, RANIA shall at all times hold WASIM harmless and indemnified from and against any and all Separate Indebtedness incurred or accrued by her, including all reasonable attorneys' fees and related expenses incurred defending against a claim relating to RANIA's Separate Indebtedness.

6.    Past and Future Gifts: The Parties acknowledge that WASIM has already given gifts to RANIA, including jewelry, cash and other personal items, totaling approximately US$500,000 in value. So there is no misunderstanding, the Parties expressly agree that these gifts from WASIM to RANIA now belong to RANIA as her Separate Property (as defined in subsection 4.1 above) free of any claim whatsoever by WASIM. Similarly, (a) any gifts from WASIM to RANIA after this Agreement is signed shall be considered RANIA's Separate Property; and (b) any gifts from RANIA to WASIM after this Agreement is signed shall be considered WASIM's Separate Property.

7.    Definition of Joint Property:

7.1.    The term "joint property" shall mean property titled in the names of, and belonging to, WASIM and RANIA collectively; however, joint shall not mean non-marital, or part of the community.

7.2.    The intent of the Parties is to make it so that, through this Agreement, there is no marital property, and only limited joint property as defined above, created during the marriage.

CONFIDENTIAL

RY                WS

7.3.    The following shall constitute the Parties' Joint Property:

(a)    Property titled in, or held in, the Parties' joint names.

(b)    Tangible personal property that is not titled where it cannot be determined which Party's money was used to acquire the personal property or in which Party's name it was acquired.

(c)    Property acquired before or during the marriage by the Parties jointly by way of gift, bequest, or devise from a third party.

(d)    Property designated as Joint Property by written agreement between the Parties signed with the same formalities as this Agreement and with no indication of the percentage owned by each Party.

(e)    Appreciation, increments, increases and accretions of Joint Property, whether passive (resulting from market forces) or active (resulting from the marital efforts of either Party).

(f)    Assets acquired in sales of, exchanges for, conversions of, or acquisitions with Joint Property;

(g)    Assets in any joint bank or brokerage account regardless of who funds the account(s); and

(h)    Income related to Joint Property.

7.4.    With the exception of the specific categories of Joint Property set forth immediately above, all other property acquired by either Party during the marriage shall be considered WASIM's or RANIA's sole and Separate Property consistent with subsection 4.1 above.

7.5.    The Parties mutually warrant and represent to each other that there is no Joint Property currently owned or held by them as of the date they signed this Agreement.

8.    Effect of Either Party Dying While The Parties Are Still Married.

8.1.    If RANIA is alive and married to WASIM on the date of his death, RANIA shall receive (a) all of the Parties' Joint Property; and (b) a lump sum payment of US$500,000 to be paid within sixty (60) days after WASIM's death by his personal representative. The Parties agree that WASIM shall provide for the above referenced bequest of US$500,000 in either a Will, a Trust, through a beneficiary designation on a key person policy, or in some other document of

CONFIDENTIAL

testamentary transfer to ensure that this sum shall be distributed outright to RANIA as soon as practical after WASIM's date of death. A copy of the Will, the Trust, beneficiary designation, or other document of testamentary transfer to RANIA providing for such bequest shall be provided to RANIA within six (6) months of the date of the Parties' marriage. The Parties agree that the payment of the aforesaid bequest of US$500,000 to RANIA shall constitute a valid and binding obligation and claim against WASIM's estate and/or Trust. Any Trust created after the Parties' marriage (whether revocable or irrevocable) shall contain a requirement that the trustee(s) comply with the terms of this Agreement.

8.2.    Except as provided for in subparagraph 8.1 above (and to the extent necessary to enforce any obligations due from WASIM to RANIA under this Agreement or to the extent WASIM makes any voluntary testamentary provisions pursuant to subsection 8.4 below), RANIA agrees that she shall not make any claim against WASIM's estate arising from this Agreement.

8.3.    WASIM agrees that he shall not make any claim against RANIA's estate arising from this Agreement.

8.4.    Except as agreed to by WASIM in subsection 8.1 above, neither Party shall be required to make any provision with respect to her or his Separate Property for, or for the benefit of, the other Party on account of such Party's death, and each Party shall have the absolute right to dispose of all of her or his Separate Property by Last Will and Testament, or through other estate planning documents, as she or he deems appropriate. Accordingly, and except to enforce the obligations set forth in this Agreement, each Party hereby waives and releases any and all rights that he or she may hereafter acquire against the other Party as his/her surviving spouse under the present and future laws of all jurisdictions:

> ➢ to elect to take against any Last Will and Testament or codicil of the other Party now or hereafter in force;

> ➢ to share in the other Party's estate in case of intestacy;

> ➢ to act as executor, executrix, administrator or administratrix, as the case may be, of the other Party's estate unless expressly designated as such in the other Party's Last Will and Testament; and/or

> ➢ to assert any rights against the other Party for dower, curtesy, statutory allowance or homestead.

CONFIDENTIAL

Should either RANIA or WASIM breach the foregoing provisions of this subsection, the breaching Party shall be responsible for, and shall pay, any and all attorneys' fees and disbursements incurred by the heirs, executors, personal representatives, administrators, legal representatives and assigns of the deceased Party incurred in enforcing the provision of this Agreement as a result of the breaching Party's actions or failures to act.  However, nothing in this Agreement is intended to or shall constitute a waiver by either Party of any testamentary provisions that the other Party may hereafter voluntarily make for the other Party in her/his Last Will and Testament or through other estate planning documents, as she or he deems appropriate.

9.     Effect of Either Party Filing a Petition to Dissolve the Parties' Marriage In Florida or In Another Jurisdiction.

9.1.    In General; Mutual Understanding and Agreement of The Parties. Except as otherwise expressly provided for in this Agreement, neither Party shall make or assert any claim against the other Party or the other Party's Separate Property in connection with any proceeding for dissolution of marriage, divorce, separation, or similar legal proceeding between the Parties, including, without limitation, any claim in the nature of, or for, temporary support or maintenance (if such a waiver is permitted by Florida law at the time the operative event occurs), separate support or maintenance, alimony, equitable division of property or property transfer.

9.2.    Cash Payment Upon Entry of Judgment Dissolving the Parties' Marriage. Within five (5) days after the entry of a final judgment by a court of competent jurisdiction legally dissolving the parties' marriage, WASIM shall pay to RANIA (a) as sadaq the sum of US$300,000 as required by section 2 of this Agreement; (b) any payments required by subsection 2.2 that have not been paid as of the date of the entry of the final judgment; and (c) the payment, if any, required by subsection 9.3 below. All payments made by WASIM to RANIA pursuant to this subsection 9.2 and 9.3, as well as pursuant to subsection 2.2 shall be nontaxable to RANIA and non-tax-deductible by WASIM.  Except for these amounts, and except for any child support obligations that may arise, WASIM shall not owe RANIA any other payments arising out of their marriage. Further, and consistent with the Parties' agreement as set forth in this subsection 9.2, RANIA agrees that she shall not make any claim whatsoever against WASIM seeking additional financial compensation on the ground that the benefits to which she is entitled under this Agreement, including the sadaq amount, is unfair or unconscionable.

CONFIDENTIAL

Ry                    WS

9.3.   Lump Sum Alimony Payments Tied to the Length of the Parties' Marriage and Related Provisions.

9.3.1. In addition to any dower and sadaq to which RANIA is entitled pursuant to the Parties' Mahr Agreement as provided for herein, WASIM further agrees to pay RANIA as WASIM's sole obligation (except as otherwise provided for within this Agreement) and in lieu of any form of support, including, but not limited to temporary (to the fullest extent allowable by Florida law), rehabilitative, bridge-the-gap, durational, or periodic permanent, or otherwise the following:

(a) For a marriage lasting three (3) to five (5) years from the date of the Parties' legal marriage under Florida law, RANIA shall receive the sum of US$150,000 as non-modifiable lump-sum alimony.

(b) For a marriage lasting six (6) to ten (10) years from the date of the Parties' legal marriage under Florida law, RANIA shall receive the sum of US$300,000 as non-modifiable lump sum alimony.

(c) For a marriage lasting eleven (11) to sixteen (16) years from the date of the Parties' legal marriage under Florida law, RANIA shall receive the sum of US$500,000 as non-modifiable lump sum alimony.

(d) For a marriage lasting seventeen (17) or more years from the date of the Parties' legal marriage under Florida law, RANIA shall receive the sum of US$700,000 as non-modifiable lump sum alimony.

9.3.2. The amount due under subsection 9.3.1 shall be paid in one lump sum within thirty (30) days of the entry of the final judgment dissolving the Parties' marriage.

9.3.3. The provisions in subsection 9.3.1 concerning how many years the parties have been married shall be calculated by counting the number of full years from the date the parties are married to the date that either party files a Petition for Dissolution of Marriage or its equivalent. There shall be no pro rata amounts due for any portion of a full year. For example, if either Party files to dissolve the Parties' marriage after nine (9) years and eleven (11) months from the date of the legal marriage, the Parties would be deemed married for nine (9) years for purposes of this subsection.

9.3.4. The payments provided for in subsection 9.3.1 shall be enforceable by the contempt powers of the court.

CONFIDENTIAL

RY

WS

9.3.5. The payments provided for in subsection 9.3.1 are in the nature of property and are non-modifiable by either Party or by any court for any reason, whether or not circumstances change. This waiver of court modification is final and irrevocable.

9.3.6. This Agreement has been executed subsequent to the effective date of §11051 (c) of the Tax Cuts & Jobs Act of 2017 ("TCJA"), with the mutual understanding of the Parties that in the event any lump sum alimony payments are due and payable as provided for in subsection 9.3.1, said payments shall be neither taxable to the recipient as alimony nor tax-deductible to the payor. If, prior to the expiration of the obligation, the alimony tax deduction should be restored to its pre-TCJA form (similar to former §71 and §215) by a change in the governing law or its authoritative interpretation, then the Parties agree that they shall designate the periodic payments provided for in subsection 9.3.1 as non-taxable to the recipient and non-deductible to the payor, as they would have been entitled to do under §71(b)(1)(B).

9.4. RANIA's Entitlements Upon Dissolution of Marriage. In the event the Parties' marriage is terminated by the entry of a judgment dissolving their marriage, and consistent with the other provisions in this Agreement, RANIA shall receive the following in addition to the cash payment required by subsection 9.2 above, and in addition to the lump sum payment required by subsection 9.3 above:

9.4.1 All of her Separate Property and Separate Indebtedness, in addition to the dower and sadaq payments required by subsections 2.2 and 9.2 above.

9.4.2 One half of the Parties' Joint Property and one half of the Parties' joint debts. The Parties agree that, except as otherwise set forth in this Agreement, that in the event of a dissolution of marriage or divorce, any Joint Property and joint debts shall be divided between them equally. To the extent that an item of Joint Property cannot be equally divided or the Parties cannot agree upon an exchange of property related to their respective shares of an item of Joint Property, the Joint Property shall be immediately sold and the net sale proceeds resulting from the sale of the property shall be divided equally between the Parties. Any tax liability arising from the sale of any Joint Property shall be equally divided between the Parties. The tax basis and other tax consequences shall be taken into consideration to ensure an equal distribution of the Joint Property.

9.4.3 All of the assets, debts and income she acquires (or earns) after the divorce action was filed or otherwise deemed as commenced.

CONFIDENTIAL

$R\gamma$

WS

9.4.4 The cash payment due as provided in subsection 9.2 above and the lump sum payment due as provided in subsection 9.3 above.

9.5. <u>WASIM's Entitlements Upon Dissolution of Marriage</u>. In the event the Parties' marriage is terminated by the entry of a judgment dissolving their marriage, and consistent with the other provisions in this Agreement, WASIM shall receive the following:

9.5.1. All of his Separate Property and Separate Indebtedness.

9.5.2. One half of the Parties' Joint Property and one half of the Parties' joint debts, subject to the same provisions as set forth subsection 9.3.2 above.

9.5.3. All of the assets, debts and income he acquires (or earns) after the divorce action was filed or otherwise deemed as commenced.

9.6. <u>Waiver of Alimony by WASIM.</u> Separate and apart from all the other provisions of this Agreement, WASIM expressly waives and releases, now and forever, any and all rights and claims to receive any support or maintenance from RANIA, whether in the nature of alimony or otherwise, at any time, including, but not limited to, bridge-the-gap alimony, rehabilitative alimony, durational alimony, permanent alimony or any combination of these forms of alimony, and WASIM shall not at any time make any demands or claims upon RANIA or her estate for his care, support or maintenance. This waiver provision is non-modifiable regardless of any change in the financial circumstances of either Party or both Parties between the Effective Date and the occurrence of the operative event. The Parties acknowledge and agree that this waiver does not apply to, or have any bearing on, any child support obligations that may arise if the Parties have children.

9.7. <u>Waiver of Alimony by RANIA.</u> Separate and apart from all the other provisions of this Agreement, RANIA expressly waives and releases, now and forever, any and all rights and claims to receive any support or maintenance from WASIM, whether in the nature of alimony or otherwise, at any time, including, but not limited to, bridge-the-gap alimony, rehabilitative alimony, durational alimony, permanent alimony or any combination of these forms of alimony, and RANIA shall not at any time make any demands or claims upon WASIM or his estate for her care, support or maintenance. This waiver provision is non-modifiable regardless of any change in the financial circumstances of either Party or both Parties between the Effective Date and the occurrence of the operative event. The Parties acknowledge and agree that this waiver does not apply to, or have any bearing on, any child support obligations that may arise if the Parties have children.

CONFIDENTIAL

10.    Covenant Not to Sue and Prevailing Party Provision.

10.1.    Covenant Not To Sue.    Consistent with the prior provisions in this Agreement, and except to ask the court to adopt and enforce the provisions of this Agreement without change in an uncontested dissolution of marriage proceeding, neither Party nor her or his heirs, personal representatives, executors, administrators, legal representatives or assigns shall, at any time or under any circumstances, under any statutory authority or case law, (a) make or assert against the other Party or such other Party's heirs, personal representatives, executors, administrators, legal representatives or assigns (such persons being referred to collectively as the "Benefited Parties") any claims or demands of any type or nature whatsoever, including without limitation claims or demands for property, spousal support, maintenance, alimony, elective share or attorney's fees; or (b) initiate, join or otherwise participate in any action, suit or other proceeding in which any such claims or demands are asserted against the other Party or any of the Benefited Parties. Each Party and her or his heirs, personal representatives, executors, administrators, legal representatives and assigns shall hold the other Party and the other Benefited Parties harmless from and indemnified against any and all claims or demands which are in any way different from, or in excess of, the rights of such Party set forth in this Agreement.

10.2.    Prevailing Party Provision.    Despite agreeing not to do so in subsection 10.1 above, and except in pursuing an uncontested dissolution of marriage proceeding in which the filing Party is asking the court to adopt and enforce the provisions of this Agreement without change, should either Party initiate or participate in any legal proceeding whatsoever, in any jurisdiction whatsoever, against the other Party or the Benefited Parties arising from the terms of this Agreement or from the marital relationship of the Parties, the prevailing Party shall be entitled to reimbursement from the losing Party for all reasonable costs and expenses incurred, including, but not limited to reasonable attorney's fees and costs for the services rendered to the prevailing Party in any such proceeding and through the appellate level of review. The proceedings which the Parties agree are intended to be covered and prohibited by this provision include, but are not limited to, proceedings seeking to set aside this Agreement, proceedings seeking to modify the terms of this Agreement, and proceedings seeking to challenge either Party's Last Will and Testament or other testamentary documents.

11.    Grounds for Divorce; Survival of Agreement.

11.1.    Except in those jurisdictions which require a party to allege fault in order to secure a divorce, any petition to dissolve the Parties' marriage that is filed by either Party against the other Party shall not fix fault or blame on the other Party but shall be based only upon the irretrievable breakdown of the

CONFIDENTIAL

marriage or similar "no fault" grounds. If, however, the Parties are living in a fault-based jurisdiction at the time either of them chooses to file a petition to dissolve their marriage, the filing Party may allege fault to the extent necessary for the presiding court to have jurisdiction to enter a final judgment dissolving the Parties' marriage. In such a case, the filing Party shall not be deemed to be in breach of this Agreement.

11.2. If any such proceeding is ever commenced by either Party, and regardless of whether the proceeding is initiated in a no-fault or fault based jurisdiction, the Parties agree that this Agreement shall be exhibited to the court under seal and that each Party shall not disseminate the Agreement or its contents to third persons or use the Agreement or the information contained in the Agreement in any other proceeding without the permission of the Court. The Parties shall request the court to incorporate the terms of this Agreement by reference in its final judgment dissolving the Parties' marriage and make this Agreement an enforceable part of the judgment and, if the Agreement must be filed with the court, the Parties shall request the court to file the Agreement under seal. Notwithstanding any such incorporation, the provisions of this Agreement shall in all events survive the judgment as an independent contract that is forever binding and conclusive upon the Parties and their respective executors, administrators, legal representatives, heirs, successors and assigns. If any legal proceeding is ever filed to enforce the Agreement, and the Agreement must be filed with the court, the Parties shall request the court to file the Agreement under seal. No provision of this Agreement shall be extinguished by merger as a result of incorporation in any judgment or other decree or order. Neither Party shall cause to be inserted or request that there be inserted in any judgment any term or provision which is inconsistent in any respect with the provisions of this Agreement. The purposes of the preceding provisions of this section 11 are (a) to protect each Party from any attempt by the other Party to vary the terms of this Agreement before or after the entry of a judgment; and (b) to enable the Parties to procure enforcement of the terms of this Agreement incorporated in a judgment as a binding contract in any court of competent jurisdiction.

11.3. Consistent with subsection 11.2 above, the Parties agree that this Agreement shall remain confidential between the Parties, their attorneys and their accountants, if any.

12.    Representations and Warranties.

12.1. Representations and Warranties of WASIM. In addition to the representations and warranties made by WASIM elsewhere in this Agreement, WASIM represents and warrants to RANIA that:

CONFIDENTIAL

12.1.1. <u>Disclosure of Current Financial Condition.</u> WASIM has furnished to RANIA the attached schedule of his assets (<u>Composite Exhibit A</u>) ("WASIM's Schedule") and other financial disclosure. WASIM's Schedule contains a true, accurate and complete, in all material respects, identification and description of WASIM's Separate Property, as well as WASIM's good faith belief as to the values of that Separate Property as of the date indicated on WASIM's Schedule. Although susceptible to significant fluctuations from year to year, WASIM also hereby represents to RANIA that his approximate effective income/distributions and in-kind benefits received from all sources in 2018 was in excess of US$1,000,000 but less than US$1,500,000, and will represent a greater than 10% increase in income over his 2017 earnings.

12.1.2. <u>Voluntary Execution and Satisfaction With RANIA's Financial Disclosure.</u> WASIM acknowledges that RANIA provided him with a fair and reasonable disclosure of her Separate Property; that he is satisfied with the extent and scope of the financial disclosure; that he voluntarily, intentionally and expressly waived any right to receive any further disclosure from RANIA; and he shall not assert in any legal proceeding that this Agreement is invalid on the ground that RANIA did not provide him with adequate financial disclosure. WASIM further re-confirms that he executed the Agreement voluntarily; the Agreement was not the product of fraud, duress, coercion, or overreaching; and that the Agreement was in his opinion conscionable when it was executed.

12.2. <u>Representations and Warranties of RANIA.</u> In addition to the representations and warranties made by RANIA elsewhere in this Agreement, RANIA represents and warrants to WASIM that:

12.2.1. <u>Disclosure of Current Financial Condition.</u> RANIA has furnished to WASIM the attached financial affidavit (<u>Exhibit B</u>) ("RANIA's Affidavit") and other financial disclosure. RANIA's Affidavit contains a true, accurate and complete, in all material respects, identification and description of RANIA's Separate Property, as well as RANIA's good faith belief as to the values of that Separate Property as of the date indicated on RANIA's Affidavit.

12.2.2. <u>Voluntary Execution and Satisfaction With WASIM's Financial Disclosure.</u> RANIA acknowledges and represents that she was provided a full, fair and reasonable disclosure of WASIM's Separate Property and an estimate of his 2018 income/distributions and in-kind benefits from all sources; that she is satisfied with the extent and scope of the financial disclosure; and that she has relied on WASIM's agreement that she shall never, under any circumstances whatsoever, become responsible for WASIM's Separate Indebtedness, including any business-related debts. RANIA further re-confirms that she executed the Agreement voluntarily; the Agreement was not the

WS

CONFIDENTIAL



product of fraud, duress, coercion, or overreaching; and that the Agreement was in her opinion conscionable when it was executed.

12.2.3. Acknowledgment as to Valuations. RANIA recognizes that the values set forth on WASIM's Schedule reflect interests in certain assets, the value of which assets may not be readily ascertainable and may be subject to differing opinions. RANIA nevertheless acknowledges and agrees that the methodologies and techniques used in the valuations set forth on WASIM's Schedule are acceptable to her and reflect a reasonable, good faith effort on the part of WASIM in valuing such of his assets whose valuations are inherently difficult to determine.

13.    Joint Income Tax Returns. In the event the Parties decide to file a joint state and/or federal tax return for any qualifying year, it is understood and agreed that by doing so, neither Party acquires any interest in or right to ownership of any of the other's Separate Property. WASIM shall be solely responsible for the payment of any income taxes due.

14.    Advice of Counsel. RANIA has retained Maria Gonzalez of Young, Berman, Karpf & Gonzalez, P. A., of Ft. Lauderdale, , Florida, to advise her in connection with this Agreement. WASIM has retained Gregory N. Anderson, P. A. of Coral Gables, Florida, to advise him in connection with this Agreement. Each Party declares and represents to the other Party that, after receiving such independent legal advice from counsel of her/his own selection, such Party fully understands the facts and has been fully informed of all legal rights, liabilities and obligations she/he has under this Agreement; that after receiving such advice and knowledge, each believes this Agreement to be fair, just, reasonable and adequate.

15.    Entire Agreement. This Agreement constitutes the final and entire agreement between the Parties with respect to the subject matter covered in the Agreement, and it supersedes any and all prior commitments, agreements, statements, promises, representations and/or understandings, whether written or oral, relating to any subject matter covered in this Agreement. This agreement may not be contradicted or varied by evidence of prior, contemporaneous or subsequent oral agreements or discussions of the parties. This Agreement and all covenants, terms, conditions and other provisions in it may be amended, waived or modified only in accordance with section 16 below.

16.    Amendments and Waivers. Changes in, or amendments or additions to, this Agreement may be made only if set forth in a writing duly and properly executed by both Parties. Any consent or waiver may be given by either Party to the other Party subject to the requirements contained in this section.

WS

CONFIDENTIAL

RY

17.    Children. The Parties understand and agree that nothing in this Agreement shall, or may, affect in any way (a) the rights of both RANIA and WASIM to share in the parenting and upbringing of any child of the marriage between WASIM and RANIA, including any child legally adopted by the Parties, and/or (b) the obligations of both RANIA and WASIM to financially support any such child. However, the Parties do agree at this time that (a) any parenting plan they enter into should their marriage ever be dissolved will be considered a child custody determination for the purposes of, and is intended to comply with all provisions of, the Uniform Child Custody Jurisdiction and Enforcement Act, the International Child Abduction Remedies Act, 42 U.S.C. §§ 11601 et seq., the Parental Kidnapping Prevention Act, and the Convention on the Civil Aspects of International Child Abduction enacted at the Hague on October 25, 1980; and (b) any children born of their marriage shall be raised in the Muslim faith.

18.    Legal and Other Fees and Expenses.    Each Party shall be responsible for her or his own attorney's fees and other expenses incurred in connection with the drafting, review, interpretation and signing of this Agreement, including fees incurred seeking the advice of counsel with respect to the Parties' respective rights and obligations under this Agreement.

19.    Strict Performance and Waiver.   The failure of either Party in any instance to insist upon the strict performance of any covenant, obligation, term, condition or other provision of this Agreement shall not constitute a waiver of any such covenant, obligation, term, condition or other provision. The waiver of any covenant, obligation, term, condition or other provision shall not affect or alter this Agreement in any other respect, and each and every covenant, obligation, term, condition or other provision of this Agreement shall, in such event, continue in full force and effect, except as so waived, and shall be operative with respect to any other then existing or subsequent breach or default in connection therewith.

20.    Invalidity and Severability.   If any provision of this Agreement shall be held or deemed to be, or shall in fact be, invalid, inoperative, illegal or unenforceable as applied to any particular case in any jurisdiction or jurisdictions, because of the conflict of any provision in this Agreement with any constitution, statutes, laws, public policy or for any other reason, such circumstance shall not have the effect of rendering the provision or provisions in question invalid, inoperative, illegal or unenforceable in any other jurisdiction, or in any other case or circumstance, or of rendering any other provision or provisions in this Agreement invalid, inoperative, illegal or unenforceable to the extent that such other provisions are not themselves actually in conflict with such constitution, statute, laws or public policy.

CONFIDENTIAL    WS

RY

21.    Governing Law.  Regardless of in which jurisdiction either Party or both Parties is/are seeking to enforce this Agreement, this agreement shall be governed by, interpreted and construed according to the internal laws of the State of Florida applicable to contracts executed in, and to be fully performed within, the State of Florida. Consistent with the prior sentence, the Parties reaffirm that this Agreement has been executed and completed in Florida and is a Florida contract.

22.    Further Assurances. Whenever reasonably called upon or requested to do so by the other Party (including such other Party's trustees, personal representatives, executors, administrators, legal representatives and/or assigns), each Party and his or her trustees, personal representatives, executors, administrators, legal representatives and/or assigns will promptly execute, acknowledge and deliver without further consideration such written instrument or instruments as may be necessary or convenient from time to time to effectuate or carry out the intent of the provisions of this Agreement, including, without limitation, any document that may be required to enable the other Party to sell, encumber, transfer, hypothecate, designate the beneficiary of or otherwise dispose of that Party's Separate Property.

23.    Estates, Executors, Etc.; No Assignment.  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective estates, heirs, representatives, executors and administrators, but neither the rights nor obligations of either Party under this Agreement are otherwise assignable.

24.    Construction.  This Agreement shall be construed without regard to the identity of the person who drafted it. Each and every term, covenant and provision of this Agreement shall be construed as though both Parties participated equally in its drafting, and any rule of construction that a document is to be construed against the drafting Party shall not be applicable to this Agreement.

25.    Headings.  The headings of the sections and subsections of this Agreement are inserted for convenience only and shall not constitute a part of this Agreement, add meaning to, or limit or modify the provisions hereof.

26.    Counterparts.  This Agreement shall be executed simultaneously in two (2) counterparts, each of which shall be deemed an original, and both of which together shall constitute the same instrument; but in proving or enforcing this Agreement, it shall not be necessary to introduce any more than one of such counterparts.

CONFIDENTIAL

RY          WS

Before witnesses and a notary, the Parties have signed this 23-page Agreement, exclusive of exhibits, in Miami, Miami-Dade County, Florida, as of the date indicated.

Dated: May 30, 2019

_____
RANIA YOUSEF

Witness: _____
Naidelys Sugo

Witness: _____
ARIADNA Reinoso

Dated: May 30 2019

_____
WASIM SHOMAR

Witness: _____
Naidelys Sugo

Witness: _____
ARIADNA Reinoso

22 | P a g e

CONFIDENTIAL

RY   WS

STATE OF FLORIDA )
)
COUNTY OF MIAMI-DADE )

I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State aforesaid and in the County aforesaid to take acknowledgments, personally appeared RANIA YOUSEF who produced her _____ FDL ___ as identification, and who executed the foregoing instrument and acknowledges before me that she executed said instrument for the purposes therein expressed.

DATED this 30 day of May, 2019.

Notary Public

LILIANA NARCISO
MY COMMISSION # GG 076771
EXPIRES: June 24, 2021
Bonded Thru Budget Notary Services

STATE OF FLORIDA )
)
COUNTY OF MIAMI-DADE )

I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State aforesaid and in the County aforesaid to take acknowledgments, personally appeared WASIM SHOMAR who produced his _____ FDL ___ as identification, and who executed the foregoing instrument and acknowledges before me that he executed said instrument for the purposes therein expressed.

DATED this 30 day of May, 2019.

Notary Public

LILIANA NARCISO
MY COMMISSION # GG 076771
EXPIRES: June 24, 2021
Bonded Thru Budget Notary Services

CONFIDENTIAL

RY   WS

# COMPOSITE EXHIBIT "A"

RY    WS

| WASIM'S SCHEDULE OF HIS SEPARATE PROPERTY | |
| --- | --- |
| **SEPARATE PROPERTY** | **Estimated Value** |
| A. Cash, Brokerage and Retirement Accounts: | |
| Bank of America | 87,283 |
| BankUnited | 1,458 |
| Mercantil Bank | 23,267 |
| City Nat'l Bank | 1,340 |
| SUB-TOTAL | 113,348 |
| B. Husband's Business Interests | |
| See attached schedule of business interests | 29,350,000 |
| SUB-TOTAL | 29,350,000 |
| C. Partially Owned Real Property: | |
| Calders Corner Inv | 600,000 |
| Equity Capital Investment, LLC | 450,000 |
| Second home (outside the U.S.) | 250,000 |
| SUB-TOTAL | 1,300,000 |
| D. Personal Property: | |
| Jewelry | 20,000 |
| Furniture, fixtures, etc. | 100,000 |
| Art | 200,000 |
| Misc. other personal belongings | 20,000 |
| SUB-TOTAL | 340,000 |
| **TOTAL** | 31,103,348 |

RY    WS

| WASIM'S SCHEDULE OF BUSINESS INTERESTS[1] | | | |
|---|---|---|---|
| | Wasim's Ownership Interest | Company Value | Value of Wasim's Interest |
| Lynx Business Solutions | 100.00% | $ 1,700,000 | $ 1,700,000 |
| Property Management Companies | | | |
| (Lynx Property Services, LandCap, Apogee) | 50.00% | $ 2,600,000 | $ 1,300,000 |
| Universal Lynx | 100.00% | $ 1,000,000 | $ 1,000,000 |
| Lynx Construction Management | 50.00% | $ 14,000,000 | $ 7,000,000 |
| Lynx Engineering | 50.00% | $ 200,000 | $ 100,000 |
| 45 Almeria | 25.00% | $ 2,800,000 | $ 700,000 |
| Lynx Realty | 100.00% | $ 200,000 | $ 200,000 |
| Johnstek/Lynx Technologies/etc. | 40.00% | $ 4,000,000 | $ 1,600,000 |
| Incite Innovation Labs | 100.00% | $ 3,000,000 | $ 3,000,000 |
| Lynx Development Group | 25.00% | $ 8,000,000 | $ 2,000,000 |
| BVHR (Hotel Operations and R/E Holdings) | 25.00% | $ 8,000,000 | $ 2,000,000 |
| Lynx Equity Group | 50.00% | $ 6,000,000 | $ 3,000,000 |
| Ocean & 5th LLC | 25.00% | $ 6,000,000 | $ 1,500,000 |
| Bentley Condo Hotel, LLC | 25.00% | $ 8,000,000 | $ 2,000,000 |
| Luxe Hospitality, LLC | 25.00% | $ 8,000,000 | $ 2,000,000 |
| Apollo Bank | Unknown minority interest | Unknown | $ 250,000 |
| TOTAL | | | $ 29,350,000 |

**Footnote:**

1. The company values on this schedule represent Wasim's personal estimated values based on revenue/income multipliers that are frequently used for the various industries in which these companies operate. Moreover, all values include a significant amount of personal goodwill directly attributable to Wasim's involvement in these companies' operations.

$Ry$            WS

# EXHIBIT "B"

IN RE:
RANIA YOUSEF,

## FAMILY LAW FINANCIAL AFFIDAVIT (SHORT FORM)
(Under $ 50,000 Individual Gross Annual Income)

I, *{full legal name}* Rania  Yousef, _____ , being sworn, certify that the following
information is true:

My Occupation: _____  Employed by: _____

Business Address: _____

Pay rate: $ ____0.00____  ( ) every week  ( ) every other week  ( ) twice a month  ( ) monthly  ( ) other _____

☐ Check here if unemployed and explain on a separate sheet your efforts to find employment.

**SECTION    I.  PRESENT MONTHLY GROSS INCOME:**

**All amounts must be MONTHLY.**                                                    Footnote No.

1. $ ____0.00__  Monthly gross salary or wages
2. ____0.00__  Monthly bonuses, commissions, allowances, overtime, tips, and similar payments
3. ____0.00__  Monthly business income from sources such as self-employment, partnerships, close corporations, and/or independent contracts (gross receipts minus ordinary and necessary expenses required to produce income) ( ☐ Attach sheet itemizing such income and expenses.)
4. ____0.00__  Monthly disability benefits/SSI
5. ____0.00__  Monthly Workers' Compensation
6. ____0.00__  Monthly Unemployment Compensation
7. ____0.00__  Monthly pension, retirement, or annuity payments
8. ____0.00__  Monthly Social Security benefits
9. ____0.00__  Monthly alimony actually received
   9a. From this Case:    $    0.00
   9b. From other case(s):    0.00  Add 9a and 9b
10. ____0.00__  Monthly interest and dividends
11. ____0.00__  Monthly rental income (gross receipts minus ordinary and necessary expenses required to produce income) (☐ Attach sheet itemizing such income and expense items)
12. ____0.00__  Monthly income from royalties, trusts, or estates
13. ____0.00__  Monthly reimbursed expenses and in-kind payments to the extent that they reduce personal living expenses
14. ____0.00__  Monthly gains derived from dealing in property (not including nonrecurring gains)
15. ____0.00__  Any other income of a recurring nature (list source) _____
16. _____
17. $ __0.00__  **TOTAL PRESENT MONTHLY GROSS INCOME** (Add lines 1 - 16)

Florida Family Law Rules of Procedure Form I2.902(b), Family Law Financial Affidavit (Short Form) (01/15)

RY    WS

**17. $          0.00    PRESENT MONTHLY GROSS INCOME** (From prior Page)

**PRESENT MONTHLY DEDUCTIONS:**

Monthly federal, state and local income tax (corrected for filing status and
allowable dependents and income tax liabilities)

a. Filing Status ___ SGL ___                                                    Footnote No.

18. ____ 0.00 ____     b. Number of dependents claimed ___ 0 ___

19. ____ 0.00 ____ Monthly FICA or self-employment taxes

20. ____ 0.00 ____ Monthly Medicare payments

21. ____ 0.00 ____ Monthly mandatory union dues

22. ____ 0.00 ____ Monthly mandatory retirement payments

23. ____ 0.00 ____ Monthly health insurance payments (including dental insurance), excluding portion paid for any minor children of this relationship

24. ____ 0.00 ____ Monthly court-ordered child support actually paid for children from another relationship

Monthly court-ordered alimony actually paid

25a. from this case: $ ___ 0.00 ___

25. ____ 0.00 ____     25b from other case(s): ___ 0.00 ___ Add 25a and 25b

**26. $   0.00    TOTAL DEDUCTIONS ALLOWABLE UNDER SECTION 61.30, FLORIDA STATUTES** (Add lines 18 through 25)

**27. $   0.00    PRESENT NET MONTHLY INCOME** (Subtract line 26 from line 17)

Florida Family Law Rules of Procedure Form 12.902(b), Family Law Financial Affidavit (Short Form) (01/15)

RY     WS

## SECTION II.   AVERAGE MONTHLY EXPENSES                    Footnote

### A. Household

| | |
|---|---:|
| Mortgage or Rent Payments | 1,700.00 |
| Insurance on Residence (Not in Pmt.) | 100.00 |
| Electricity | 60.00 |
| Telephone | 65.00 |
| Cable TV | 50.00 |
| Food and Home Supplies | 500.00 |
| Meals Outside Home | 300.00 |

### B. Automobile

| | |
|---|---:|
| Gasoline and Oil | 120.00 |
| Repairs | 10.00 |
| Auto Tags and Emission Testing | 15.00 |
| Auto Insurance | 150.00 |
| Car Payments (Lease or Financing) | 400.00 |

### C. Children's

| | |
|---|---:|
| No Children's expenses | 0.00 |
| No Child(ren) Another Relationship expen | 0.00 |

### D. Insurance

| | |
|---|---:|
| No Insurance expenses | 0.00 |

### E. Other monthly expenses not listed above

| | |
|---|---:|
| Clothing | 5,000.00 |
| Medical/Dental/Prescriptions (NR) | 84.00 |
| Non-Prescription Medications | 50.00 |
| Grooming | 1,000.00 |
| Club Dues and Memberships | 150.00 |
| Vacations | 8,333.00 |
| Education Expenses | 210.00 |

### F. Payments to Creditors

| | |
|---|---:|
| No Payments to Creditors | 0.00 |

Florida Family Law Rules of Procedure Form 12.902(b), Family Law Financial Affidavit (Short Form) (01/15)

RY      WS

SECTION II.   AVERAGE MONTHLY EXPENSES                     Footnote

| 28. TOTAL MONTHLY EXPENSES (add ALL monthly amounts in A through F above) | 28. $ | 18,297.00 |
|---|---|---|

**SUMMARY**

| 29. TOTAL PRESENT MONTHLY NET INCOME(from line 27 of SECTION I. INCOME ) | 29. $ | 0.00 |
|---|---|---|
| 30. TOTAL MONTHLY EXPENSES (from line 28 above) | 30. $ | 18,297.00 |
| 31. SURPLUS (If line 29 is more than line 30, subtract line 30 from line 29. This is the amount of your surplus.  Enter that amount here.) | 31. $ | |
| 32. (DEFICIT)(If line 30 is more than line 29, subtract line 29 from line 30. This is the amount of your deficit.  Enter that amount here.) | 32. $( | 18,297.00 ) |

Florida Family Law Rules of Procedure Form 12.902(b), Family Law Financial Affidavit (Short Form) (01/15)

$Ry$   WS

A. ASSETS

DESCRIPTION OF ITEM(S). List a description of each separate item owned by you and/or your spouse, if this is a petition for dissolution of marriage) LIST ONLY LAST 4 DIGITS OF ACCOUNT NUMBER. Check X in the box next to asset(s) which you are are requesting the judge award you

Nonmarital
Current Fair ( X Correct Column)

| | | FNN | Market Value | RANIA | WASIM |
|---|---|---|---|---|---|
| X | Chase (Ckg) | | 18,638.00 | X | |
| X | Chase (Svg) | | 25,120.00 | X | |
| | Stock | | 0.00 | | |
| | Real Estate | | 0.00 | | |
| | Other Business | | 0.00 | | |
| | Automobile | | 0.00 | | |
| | Retirement Plan | | 0.00 | | |
| | Life Insurance | | 0.00 | | |
| X | Contents of apartment | | 4,500.00 | X | |
| X | Sofa | | 10,000.00 | X | |
| | Other Tangible | | 0.00 | | |
| X | Jewelry- platinum 3Carat diamond engagement ring | | 325,000.00 | X | |
| X | Jewelry- Rolex watch, stainless steel/diamonds | | 17,100.00 | X | |
| X | Jewelry- various pieces (EX. "1") | 1 | 70,000.00 | X | |
| | Total Amount Assets | | 470,358.00 | | |

Florida Family Law Rules of Procedure Form 12.902(b), Family Law Financial Affidavit (Short Form) (01/15)

Ry   WS

## B. LIABILITIES

DESCRIPTION OF ITEM(S).  List a description of each debt owed by you and/or your spouse, if this is a petition for dissolution of marriage) LIST ONLY LAST 4 DIGITS OF ACCOUNT NUMBER. Check X in the box next to any debt(s) for which you believe you should be responsible

| | FNN | Current Amount Owed | Nonmarital [X] Correct Column) RANIA | WASIM |
|---|---|---|---|---|
| [X] Estimated 2018 federal income taxes | | 800.00 [X] | | |
| Total Amount Liabilities | | 800.00 | | |

## C. CONTINGENT ASSETS AND LIABILITIES

INSTRUCTIONS:  If you have any POSSIBLE assets (income potential, accrued vacation or sick leave, bonus, inheritance, etc.) or POSSIBLE liabilities (possible lawsuits, future unpaid taxes, contingent tax, liabilities, debts assumed by another), you must list them here.

| Contingent Assets | FNN | Possible Amount | Nonmarital [X] Correct Column) RANIA | WASIM |
|---|---|---|---|---|

Check X in the box next to the asset(s) which you are requesting the judge award you.

| | | Possible Amount | Nonmarital [X] Correct Column) | |
|---|---|---|---|---|
| Contingent Asset | | | [ ] | [ ] |
| Total Amount Contingent Assets: | | 0.00 | | |

| Contingent Liabilities | FNN | Possible Amount Owed | Nonmarital [X] Correct Column) RANIA | WASIM |
|---|---|---|---|---|

Check X in the box next to the debt(s) for which you believe you should be responsible.

| | | | | |
|---|---|---|---|---|
| Contingent Liability | | | [ ] | [ ] |
| Total Amount Contingent Liabilities: | | 0.00 | | |

Florida Family Law Rules of Procedure Form 12.902(b), Family Law Financial Affidavit (Short Form) (01/15)

RY   WS

I understand that I am swearing or affirming under oath to the truthfulness of the claims made in this affidavit and that the punishment for knowingly making a false statement includes fines and/or imprisonment.

Rania Yousef

**STATE OF FLORIDA**
**COUNTY OF BROWARAD**

Sworn to (or affirmed) and subscribed before me on _May 29th_ ,20_19_ by
Rania Yousef

NOTARY PUBLIC - STATE OF FLORIDA

_____ Personally known

_✓_ Produced identification

Type of identification produced _Florida drivers License_

MARIA C. Gonzalez
Notary Printed / Stamped Name

MARIA C. GONZALEZ
MY COMMISSION # GG 012142
EXPIRES: October 24, 2020
Bonded Thru Notary Public Underwriters

RY          WS

## EXHIBIT "1"

## RANIA YOUSEF'S PREMARITAL JEWELRY

1. Handmade yellow gold bracelet with small diamonds 4MLI with semi-precious stones.
2. Yellow gold necklace with pendent of semiprecious stones and small MLI diamonds (5 purple amethyst and 5 yellow topaz), and earrings.
3. White gold necklace with two stones of turquoise and small MLI diamonds, and earrings.
4. Bracelet with Pearls, 14-carat gold and small MLI diamonds. Earrings.
5. White gold necklace with small MLI diamonds. Earrings. Bracelet links.

   Estimated FMV of items 1 to 5 above is $70,000

6. Rolex watch, stainless steel, diamonds.

   FMV is $17,100

7. Platinum 3-carat diamond engagement ring

   FMV is $325,000

{00399182. 2 }